CV-11-3992 (JS)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

MARK ORLANDO,

*Petitioner,*

*- against -*

ERIC T. SCHNEIDERMAN,

*Respondent.*

## RESPONDENT'S AFFIDAVIT AND MEMORANDUM OF LAW
## IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

**KATHLEEN M. RICE**
*District Attorney, Nassau County*
*Attorney for Respondent*
262 Old Country Road
Mineola, New York 11501
(516) 571-3800

Robert A. Schwartz
Sarah S. Rabinowitz
 Assistant District Attorneys
  *Of Counsel*

<u>TABLE OF CONTENTS</u>

                                                              <u>Page</u>

Affidavit in Opposition to Petition for
  A Writ of Habeas Corpus .................................. i-ix

Respondent's Memorandum of Law
     Statement of Facts
        Introduction ............................................ 1
        The Pre-trial Suppression Hearing,
           Trial, and Procedural History ...................... 3
        The Petition for a Write of Habeas Corpus ............. 3

Point I
        Petitioner's Claim Regarding $17,000 That
        Was    Allegedly    Recovered    During    The
        Investigation Is Unexhausted, Procedurally
        Barred, And Meritless .................................. 6

Point II
        Petitioner'S Claim That His Statements To
        The Police Were Obtained In Violation Of His
        Right To Counsel Should Be Deemed Exhausted
        But  Procedurally  Barred  Because  Petitioner
        Did  Not  Fairly  Present  It  To  The  State
        Courts And He May No Longer Do So; In Any
        Event,   Petitioner's   Contention   Does   Not
        Present A Federal Constitutional Claim .................. 16

Point III
        Petitioner's    Claim    That    Testimony    By
        Detective McGinn Denied Him His Right To
        Confront His Accuser Is Meritless; Error, If
        Any, Was Harmless ...................................... 24

Point IV
        Petitioner's    Claims    Regarding    The
        Admissibility  Of  The  Storage  Facility
        Videotape And The Mannequin Should Be Deemed
        Exhausted  But  Procedurally  Barred  Because
        Petitioner Did Not Fairly Present Them To
        The State Courts And He May No Longer Do So;
        In Any Case, Petitioner Is Not Entitled To
        Habeas  Corpus  Relief  On  These  Grounds
        Because They Are Not Cognizable On Federal
        Review ................................................. 30

Point V
> Petitioner's Claim That He Was Denied A Fair
> Trial Due To Prosecutorial Misconduct Is
> Procedurally Barred.  Moreover, Petitioner
> Is Not Entitled To Habeas Corpus Relief On
> This Ground Because It Does Not Raise A
> Meritorious Claim ..................................... 39

Point VI
> Petitioner's Claim Challenging The Court's
> Charge Is Procedurally Barred And Does Not
> Rise To The Level Of A Constitutional
> Violation ............................................ 45

Point VII
> Petitioner's Ineffective-Assistance-Of-
> Counsel Claims Should Be Deemed Exhausted
> But Procedurally Barred Because Petitioner
> Did Not Fairly Present Them To The State
> Courts And He May No Longer Do So; In Any
> Case, The Claims Are Meritless .......................... 49

Conclusion ................................................. 55

Certificate of Service

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------X
MARK ORLANDO,

                                  Petitioner,

         - against -

ERIC T. SCHNEIDERMAN,

                              Respondent.
--------------------------------------------X

**AFFIDAVIT IN OPPOSITION
TO PETITION FOR A WRIT
OF HABEAS CORPUS**

CV-11-3992 (JS)

STATE OF NEW YORK)
               ) ss.:
COUNTY OF NASSAU )

    I, Sarah S. Rabinowitz, being sworn, depose and state as follows:

    1.    I am an Assistant District Attorney, of counsel to the Hon. Kathleen M. Rice, District Attorney of the County of Nassau, and am admitted to practice before this Court.

    2.    This affidavit is submitted pursuant to the order of this Court, dated November 15, 2011, directing respondent to show cause why petitioner should not be granted a writ of habeas corpus.

    3.    Unless otherwise indicated, this affidavit is made upon information and belief, based upon the records and files of the Nassau County District Attorney's Office.

4.    By agreement with the Office of the New York State Attorney General, the Nassau County District Attorney's Office is representing respondent in this matter.

5.    On the night of December 3, 2004, petitioner Mark Orlando met twenty-four-year-old Bobby Calabrese, a runner for a gambling ring, in an alley located at the intersection of Broadway and Georgia Avenue in Island Park, Nassau County. Unbeknownst to Calabrese, petitioner was accompanied to the meeting by his friend, co-defendant Herve Jeannot. Petitioner and Jeannot planned to kill Calabrese so that petitioner could avoid paying Calabrese a $17,000 gambling debt. Once at the meeting spot, Jeannot exited petitioner's car carrying a revolver and hid outside the car. Within a few minutes, Calabrese arrived and he and petitioner exited their respective cars and approached one another. When they hugged, petitioner yanked Calabrese's sweatshirt up over his head so that Calabrese could not see Jeannot approaching behind him. At that time, Jeannot moved toward Calabrese's back, facing petitioner, and fired one shot at Calabrese's head. As Calabrese fell to the ground, Jeannot fired two more shots into his head. Petitioner and Jeannot then got back into petitioner's car and drove away. Calabrese was pronounced dead at the scene.

6.    For his acts, petitioner was indicted for murder in the second degree (N.Y. Penal Law § 125.25[1]). Following a

jury trial he was convicted of that charge, and sentenced to an indeterminate term of imprisonment of twenty-five years to life (Sullivan, J., at trial and sentence; Honorof, J., at pre-trial suppression hearing). Petitioner is incarcerated pursuant to the judgment of conviction.

7. Co-defendant Herve Jeannot was tried separately several times and was ultimately convicted of murder in the first degree (N.Y. Penal Law § 125.27[1][vi]) and criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03[2]) (Berkowitz, J., at trial). Jeannot committed suicide in prison before he was sentenced.

8. On or about April 23, 2008, petitioner's appellate counsel filed a one hundred seven page brief on his behalf, raising nine claims: (1) that petitioner's statements were the product of an interrogation that occurred while he was in custody for unrelated misdemeanor charges on which he was represented by counsel, and the statements were consequently obtained in violation of his right to counsel, (2) that a detective's trial testimony regarding Jeannot's statements constituted impermissible hearsay that violated petitioner's right to confront his accuser, (3) that the videotape copy of the digital footage recorded by storage facility surveillance cameras was admitted in violation of the best evidence rule, (4) that the trial court improperly permitted the People to use

a demonstrative exhibit to display the bullet trajectories, and improperly refused to permit the jury to tamper with the exhibit during deliberations, (5) that the prosecutor made improper summation remarks that deprived petitioner of a fair trial, (6) that the People improperly failed to notify petitioner before the trial that a detective had confiscated money from petitioner's house, (7) that the court's jury charges regarding circumstantial evidence, motive, and demonstrative evidence and the use of models were improper, (8) that petitioner was denied effective assistance of trial counsel, and (9) that the appellate court should review all of the asserted issues on the merits, in the interest of justice.

9.     After the People filed a brief opposing petitioner's appeal, petitioner's appellate counsel filed a twenty page reply brief, in which she reiterated petitioner's claims and responded to the People's arguments.

10.    On April 28, 2009, a panel of the Appellate Division, Second Department, unanimously affirmed petitioner's judgment of conviction.  See People v. Orlando, 61 A.D.3d 1001 (2d Dept. 2009).  Specifically, the court held that petitioner's statements were not procured in violation of his right to counsel, and that petitioner's right to confront his accuser had not been violated when the trial court permitted a detective to testify that he told petitioner that a co-defendant had given a

iv

statement about the murder.  See id. at 1001-02.  The court also
ruled that the admission of the videotape and the mannequin
exhibit were proper (id. at 1002-03), defense counsel provided
petitioner with meaningful representation (id. at 1002), and
petitioner's remaining claims were unpreserved (id.).

11.  On June 10, 2009, appellate counsel moved in the
New York Court of Appeals for petitioner to be granted leave to
appeal from the Appellate Division's order affirming his
judgment of conviction.  The sole issue petitioner addressed in
his application for leave to appeal to the Court of Appeals was
the claim that trial testimony by a detective regarding
statements made by Jeannot, denied him his right to confront his
accuser.  See Petitioner's Application for Leave to Appeal to
the New York Court of Appeals.

12.  On October 29, 2009, the Court of Appeals denied
petitioner's application for leave to appeal.  See People v.
Orlando, 13 N.Y.3d 837 (2009).

13.  In a motion for a writ of error coram nobis, dated
January 24, 2011, petitioner sought to have the Appellate
Division's order of April 28, 2009, vacated and his appeal
reopened on the ground that appellate counsel was ineffective.

14.  On June 7, 2011, a panel of the Appellate Division
denied petitioner's motion for a writ of error coram nobis.  The
court held that petitioner had failed to establish that he was

v

denied the effective assistance of appellate counsel. <u>See</u>
<u>People v. Orlando</u>, 85 A.D.3d 823 (2d Dept. 2011).

15. Petitioner was served with a copy of the Appellate
Division's order with notice of entry on July 11, 2011.

16. Petitioner did not seek leave to appeal the denial of
his coram-nobis motion in the Court of Appeals, and any such
request would now be untimely. <u>See</u> N.Y. C.P.L. § 460.10(5)(a).[1]

17. Petitioner now seeks federal habeas corpus relief on
the following grounds: (1) that his statements were the product
of an interrogation that occurred while he was in custody for
unrelated misdemeanor charges on which he was represented by
counsel, and the statements were consequently obtained in
violation of his right to counsel; (2) that a detective's trial

---

[1] On or about July 18, 2011, the District Attorney's Office
received a document from petitioner dated July 12, 2011,
entitled "Notice of Appeal to Defendant's Writ of Error Coram
Nobis." This document had also apparently been sent to the
Appellate Division. Petitioner was not, however, entitled to an
appeal as of right regarding the Appellate Division's denial of
his coram-nobis motion (<u>see</u> N.Y. C.P.L. § 450.10); nor could
such an appeal have been brought in the Appellate Division. In
order to pursue an appeal of the Appellate Division's denial of
his coram-nobis motion, petitioner was required to make an
application for a certificate granting leave to appeal to the
New York Court of Appeals. <u>See</u> N.Y. C.P.L. §§ 450.90(1), and
460.10(5)(a). The People learned after calling the clerk's
office of the Appellate Division that the clerk has no record of
the "notice of appeal" petitioner filed relating to the denial
of his coram-nobis motion. The clerk stated that, in all
probability, the "notice of appeal" was sent back to petitioner
with a rejection notice from the court as soon as it was
received.

testimony regarding Jeannot's statements constituted impermissible hearsay that violated petitioner's right to confront his accuser; (3) that the videotape copy of the digital footage recorded by storage facility surveillance cameras was admitted in violation of the best evidence rule; (4) that the trial court improperly permitted the People to use a demonstrative exhibit to display the bullet trajectories; (5) that the prosecutor made improper summation remarks that deprived petitioner of a fair trial; (6) that the People improperly failed to notify petitioner before the trial that a detective had confiscated $17,000 from petitioner's house; (7) that the court's jury charges regarding circumstantial evidence, motive, and demonstrative evidence and the use of models were improper; and (8) that petitioner was denied effective assistance of trial counsel. See Petition for Writ of Habeas Corpus at 6-12.

18.  The petition is timely.[2]  Nevertheless, petitioner is entitled to no relief.  At the outset, his application may be dismissed as a mixed petition because his claim regarding $17,000 that was allegedly confiscated from his home during the investigation is unexhausted, and petitioner can still raise his off-the-record claim in an application to vacate judgment pursuant to N.Y. C.P.L. § 440.10.

19.  In the alternative, petitioner's application should be denied because his unexhausted claim is plainly meritless and

---

[2] Petitioner's conviction became final ninety days after the Court of Appeals denied petitioner's application for leave to appeal, on January 27, 2010.  Thereafter, petitioner had one year in which to seek habeas relief (until January 27, 2011), barring any tolling for a post-conviction collateral attack on his judgment.  See 28 U.S.C. § 2244(d)(1)(A); Williams v. Artuz, 237 F.3d at 151.  Petitioner is entitled to statutory tolling as to the time period during which his motion for a writ of error coram nobis was pending.  See 28 U.S.C. § 2244(d)(2); Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999), aff'd on other grounds, 513 U.S. 4 (2000).  In petitioner's case, therefore, the period between January 24, 2011 (the date petitioner filed his coram-nobis motion) and August 10, 2011 (the date when petitioner's time to seek leave to appeal the denial of his coram-nobis motion to the Court of Appeals expired) should not be counted toward any period of limitation under 28 U.S.C. § 2244(d).  See Bennett v. Artuz, 199 F.3d at 120.  As of January 24, 2011, petitioner had three days remaining in which he could timely file a habeas corpus petition (on January 27, 2011).  Consequently, petitioner's limitation period expired on August 13, 2011 (three days after August 10, 2011).  Because petitioner was incarcerated and proceeding pro se on the habeas petition, the timeliness of his filing should be measured from the date he handed his petition to prison authorities for filing.  See Houston v. Lack, 487 U.S. 266, 270-72 (1988).  According to the petition, petitioner placed his habeas petition in the prison mailing system on August 3, 2011, making it timely.

his remaining claims are procedurally barred from habeas corpus review and/or meritless.

20. In accordance with this Court's order, respondent is providing herewith to the Court copies of the state court record.

WHEREFORE, and for the reasons set forth in the accompanying memorandum of law, petitioner's application for a writ of habeas corpus should be denied.


_____/s/_____
SARAH S. RABINOWITZ

Sworn to before me this
17th day of January, 2012


_____/s/_____
Notary Public

SUSAN BEALLIAS
Notary Public, State of New York
No. 30-4728937
Qualified in Nassau County
Commission Expires April 30, 2014

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
MARK ORLANDO,

                        Petitioner,          CV-11-3992 (JS)

      - against -


ERIC T. SCHNEIDERMAN,

                      Respondent.
------------------------------------------X


## RESPONDENT'S MEMORANDUM OF LAW


                    Respectfully submitted,


                    Kathleen M. Rice
                    District Attorney, Nassau County
                    Attorney for Respondent
                    262 Old Country Road
                    Mineola, New York 11501
                    (516) 571-3800


Robert A. Schwartz
Sarah S. Rabinowitz
  Assistant District Attorneys
     Of Counsel

## STATEMENT OF FACTS

### Introduction

On the night of December 3, 2004, petitioner Mark Orlando drove his wife's silver Suzuki Verona to an alley located at the intersection of Broadway and Georgia Avenue in Island Park, Nassau County. Petitioner had arranged to meet there with the runner for a gambling ring, twenty-four-year-old Bobby Calabrese, regarding a $17,000 gambling debt that petitioner owed Calabrese. Unbeknownst to Calabrese, petitioner was accompanied to the meeting by his friend, co-defendant Herve Jeannot. Petitioner and Jeannot planned to kill Calabrese so that petitioner could avoid paying his $17,000 debt.

Once at the meeting spot, Jeannot exited petitioner's car carrying a .44 Magnum revolver and hid outside the car. Within a few minutes, Calabrese arrived in his gray Infiniti. Calabrese and petitioner exited their respective cars, approached one another, and began talking. Calabrese was wearing an oversized, gray hooded sweatshirt. Eventually, petitioner and Calabrese hugged, as they often did during a money exchange. When they hugged that night, however, petitioner yanked Calabrese's sweatshirt up over his head so that Calabrese could not see Jeannot approaching behind him. At that time, Jeannot started moving toward Calabrese's back,

facing petitioner, and fired one shot at Calabrese's head. As Calabrese fell to the ground, Jeannot fired two more shots into his head. Petitioner and Jeannot then got back into the Suzuki and drove away. As they drove over a bridge, petitioner slowed the car down and Jeannot threw the bullets out of the car window. Then as they drove over another bridge, petitioner stopped the car and Jeannot got out of the car and threw the revolver into the water. Calabrese was pronounced dead at the scene.

Petitioner was arrested on December 9, 2004. Initially, he denied any involvement with Calabrese's murder, but ultimately admitted that he had brought Jeannot with him to the meeting with Calabrese, had seen Jeannot shoot Calabrese, and had driven Jeannot away from the murder scene, at which point Jeannot disposed of the bullets and the revolver. Notwithstanding these admissions, petitioner maintained that he played no role in the shooting and that Jeannot acted alone.

For his acts, petitioner was indicted for murder in the second degree (N.Y. Penal Law § 125.25[1]). Petitioner was convicted, following a jury trial, during which the prosecution introduced evidence including petitioner's two inconsistent written statements, testimony that demonstrated petitioner's motive for the murder -- his $17,000 debt, a surveillance videotape depicting the relevant vehicles arriving and leaving

2

the scene of the crime, cell phone records placing petitioner in the immediate vicinity of the crime just before and after the shooting, expert crime reconstruction evidence demonstrating that someone had yanked Calabrese's sweatshirt up over his head just before the shooting, and the murder weapon, which was found at the very spot where petitioner admitted he had seen Jeannot dispose of it.   Petitioner was sentenced to an indeterminate term of imprisonment of twenty-five years to life (Sullivan, J., at trial and sentence; Honorof, J., at pre-trial suppression hearing).

## The Pre-trial Suppression Hearing, Trial, and Procedural History

Respondent relies on the summary of the pre-trial suppression hearing and trial proceedings as set forth in its Appellate Division brief (pp. 3-33).   Any additional facts relevant to a determination of the issues raised in petitioner's application for a writ of habeas corpus are set forth in the argument below.   The pertinent procedural history of petitioner's case has been summarized in the affidavit that accompanies this memorandum of law.   See respondent's affidavit at ¶¶ 6-16.

## The Petition for a Writ of Habeas Corpus

In his application for habeas corpus relief, petitioner raises the following claims: (1) that his statements were the

product of an interrogation that occurred while he was in custody for unrelated misdemeanor charges on which he was represented by counsel, and the statements were consequently obtained in violation of his right to counsel; (2) that a detective's trial testimony regarding Jeannot's statements constituted impermissible hearsay that violated petitioner's right to confront his accuser; (3) that the videotape copy of the digital footage recorded by storage facility surveillance cameras was admitted in violation of the best evidence rule; (4) that the trial court improperly permitted the People to use a demonstrative exhibit to display the bullet trajectories; (5) that the prosecutor made improper summation remarks that deprived petitioner of a fair trial; (6) that the People improperly failed to notify petitioner before the trial that a detective had confiscated $17,000 from petitioner's house; (7) that the court's jury charges regarding circumstantial evidence, motive, and demonstrative evidence and the use of models were improper; and (8) that petitioner was denied effective assistance of trial counsel. See Petition for Writ of Habeas Corpus at 6-12.

Petitioner's application for a writ of habeas corpus should be denied. Because the petition contains an unexhausted claim, it may be dismissed in its entirety. See Rhines v. Webber, 544 U.S. 269, 273-77 (2005). However, because petitioner has

shown no cause for his procedural default, his unexhausted claim is "plainly meritless" (Id. at 277), and his remaining claims are procedurally barred and/or meritless, the petition should be denied in its entirety.

POINT I

PETITIONER'S CLAIM REGARDING $17,000 THAT WAS ALLEGEDLY
RECOVERED DURING THE INVESTIGATION IS UNEXHAUSTED, PROCEDURALLY
BARRED, AND MERITLESS (responding to Ground Six of the
Petition).

Petitioner seeks federal habeas corpus relief based on
eight grounds. One of these grounds -- that the People
improperly failed to notify him before the trial that "the
Nassau County Police recovered $17,000.00 during the course of
the investigation" (Petition for Writ of Habeas Corpus at
11A) -- was raised in petitioner's appellate brief, but was
not raised in petitioner's application for leave to appeal to
the New York Court of Appeals. Because that unexhausted claim
is based at least partly on matters that are outside the record,
petitioner still has a remedy available to him in state court.
In fact, he can raise his off-the-record arguments in a motion
to vacate judgment pursuant to N.Y. C.P.L. § 440.10. Thus,
petitioner's application for a writ of habeas corpus may be
dismissed as a mixed petition. This Court can, however, still
reject the merits of petitioner's unexhausted claim, as well as
petitioner's remaining exhausted (albeit procedurally-barred
and/or meritless) claims. See Rhines v. Weber, 544 U.S. 269,
277 (2005); Goines v. Walker, 54 F.Supp.2d 153, 155-56 (E.D.N.Y.
1999). In any event, petitioner's claim regarding the alleged
discovery violation is also procedurally barred and meritless.

During the direct testimony of Detective Kuhn, who searched petitioner's home, Kuhn consistently testified that during his search, he found $2,749 (Kuhn: T707-09).[1] However, during Kuhn's cross-examination, defense counsel asked him if "the other $17,000" was "still in evidence" and "locked up" (Kuhn: T711). After that rather ambiguous reference was made, there was no further mention of the $17,000. Although petitioner claims that he was not made aware of the $17,000 in question until Detective Kuhn testified in the middle of the trial, petitioner failed to voice an objection regarding the People's alleged discovery violation at any point during or after the trial (Kuhn: T711-12).

Notwithstanding the vague reference to $17,000 during the cross-examination of Detective Kuhn (Kuhn: T711), there is nothing in the record that establishes that Kuhn found $17,000 during his search of petitioner's home, or at any other time. Indeed, Kuhn repeatedly testified that he found only $2,749 during his search of petitioner's home (Kuhn: T707-09, 711). Consequently, examination of the record reveals that the random and unexplained reference to $17,000 during Kuhn's cross-examination might well have been the result of a misstatement on

---

[1] Numbers in parentheses preceded by "T" refer to the minutes of the trial. Names preceding numerical references refer to the witnesses who gave the recounted testimony.

the part of defense counsel or an error in the transcription of the record.[2]

Moreover, even if it were established that Detective Kuhn found $17,000 in petitioner's home, there is still no indication in the record that such information was improperly withheld from petitioner (Kuhn: T711). Indeed, on its face, the record suggests that if $17,000 was recovered, petitioner was, in fact, aware of it. It was defense counsel who first brought up the $17,000 by asking, "And, the other $17,000 is still in evidence?" Id. Thus, it is evident that there are too many ambiguities in the record to permit appellate review. Thus, because crucial facts necessary to decide the merits of petitioner's claim do not appear in the record, the People argued in their Appellate Division brief (pp. 65-67) that the claim was not only unpreserved, but was also not reviewable from the record.

Notably too, petitioner did not label his discovery-related claim as "federal," nor did he cite any federal law in conjunction with his claim. See Petitioner's Appellate Division brief at 89-90; Petitioner's Reply brief at 15-16. The Appellate Division held that petitioner's claim regarding the alleged discovery violation was unpreserved for appellate

---

[2]  $17,000 was exactly the amount of money that petitioner owed Calabrese.

review, and did not review the claim on the merits. See People
v. Orlando, 61 A.D.3d at 1002. Moreover, petitioner did not
subsequently raise this claim in his application for leave to
appeal to the New York Court of Appeals. See Petitioner's
Application for Leave to Appeal to the New York Court of
Appeals.[3]

It is well settled that, before a federal court may
consider the merits of a claim raised in a habeas corpus
petition, the petitioner must have fairly presented the same
claim in the state courts; otherwise, the claim is unexhausted.
See 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270,
275 (1971); Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997);
Daye v. Attorney General of New York, 696 F.2d 186, 190-91
(2d Cir. 1982)(en banc), cert. denied, 464 U.S. 1048 (1984).
For an on-the-record claim that would normally be raised in a
direct appeal, this means that the petitioner must raise the
claim in the Appellate Division, and then in a leave application
to the New York Court of Appeals. See Grey v. Hoke, 933 F.2d
117 (2d Cir. 1991).

In order for a claim to be exhausted, however, a habeas
petitioner must also have alerted the state court to the federal

---

[3] Petitioner's confrontation-clause claim (see Point III,
infra), was the only issue he addressed in his application for
leave to appeal to the Court of Appeals.

constitutional nature of the claim.  See Baldwin v. Reese, 541 U.S. 27, 32 (2004); Davis v. Strack, 270 F.3d 111 (2d Cir. 2001).  Further, a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c); see Ellman v. Davis, 42 F.3d 144, 147 (2d Cir. 1994).

Here, the claim at issue is unexhausted for three reasons: (1) petitioner did not alert the state court to the constitutional nature of his claim, (2) petitioner did not raise the claim in his leave application to the Court of Appeals, and (3) petitioner has not exhausted his available state court remedies with respect to his off-the-record arguments.  Where a petition for federal relief is "mixed," i.e., it contains both exhausted and unexhausted claims, the petition may be dismissed in its entirety.  See Rhines v. Webber, 544 U.S. 269, 273-77 (2005); Pliler v. Ford, 542 U.S. 225, 230-31 (2004); Rose v. Lundy, 455 U.S. 509, 510 (1982); Caballero v. Keane, 42 F.3d 738, 740-41 (2d Cir. 1994).  In this case, the petition is clearly a mixed petition.

Indeed, petitioner has not exhausted his available state court remedies with respect to his claim that the People committed a discovery violation by failing to notify him that the police allegedly found $17,000 during the search of his

10

home.  See Petition for Writ of Habeas Corpus at 11A.  As discussed, this specific claim involves matters outside the record.  Accordingly, it can still be raised in an application to vacate judgment pursuant to N.Y. C.P.L. § 440.10.[4]  See, e.g., People v. Rivera, 71 N.Y.2d 705, 709 (1988); People v. Love, 57 N.Y.2d 998, 1000 (1982).  Because a motion to vacate judgment can be brought at any time after entry of judgment, petitioner -- who has yet to seek such relief -- can still pursue this remedy in state court.  See N.Y. C.P.L. Law § 440.10(1).  Under these circumstances, petitioner's application for a writ of habeas corpus may be dismissed as a mixed petition.  See Rhines v. Webber, 544 U.S. at 273-77; Pliler v. Ford, 542 U.S. at 230-31; Rose v. Lundy, 455 U.S. at 510; Caballero v. Keane, 42 F.3d at 740-41.

In the alternative, the petition may be stayed to enable petitioner to exhaust his claim in the state courts.  See, e.g., Zarvela v. Artuz, 254 F.3d 374 (2d Cir. 2001).  Because, however, petitioner has offered no excuse for his procedural default and his claim is "plainly meritless," it may be denied notwithstanding petitioner's failure to exhaust it.  As the Supreme Court has warned:

---

[4] Notably, because the Appellate Division did not determine the claim at issue on the merits, the claim would not be procedurally barred in a motion to vacate judgment under N.Y. C.P.L. § 440.10(2)(a).

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.
> . . . .
> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. at 277. Here, where petitioner has offered absolutely no excuse for his failure to exhaust his claim, and where the unexhausted claim is "plainly meritless," the claim should be denied on its merits.

As discussed in the People's Appellate Division Brief (pp. 65-67), petitioner offers no factual allegations in support of his claim that $17,000 was, in fact, confiscated during the search of his home, and, even if it was, petitioner has failed to establish that such information was improperly withheld from him, or that he was at all prejudiced by the alleged nondisclosure. Thus, there is no reason for this Court to stay the petition for further state proceedings on this issue.

12

In any event, petitioner's claim regarding the $17,000 is also procedurally barred. A federal habeas court may not review the merits of a state prisoner's federal claims if a state court rejected those claims on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Harris v. Reed, 489 U.S. 255, 261-62 (1989). A state procedural bar qualifies as an "independent and adequate" state law ground where "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 262. A state procedural rule precludes federal habeas review if it is "firmly established and regularly followed." Lee v. Kemna, 543 U.S. 362 (2002).

Here, the Appellate Division specifically noted that petitioner's contention was "unpreserved for appellate review" (People v. Orlando, 61 A.D.3d at 1002). Finding claims unpreserved where a petitioner failed to specifically alert the trial court to the issue raised on appeal is firmly established within the New York Criminal Procedure Law (see N.Y. C.P.L. § 470.05[2]), and regularly followed throughout New York State. See, e.g., People v. Donovan, 59 N.Y.2d 834 (1983) (evidentiary error); People v. Medina, 53 N.Y.3d 951 (1981) (claim that the prosecution failed to disclose an informant's identity); People

v. Carter, 31 A.D.3d 1056, 1058 (3d Dept.) lv. denied, 7 N.Y.3d 901 (2006) (admission of tape recording); People v. Cannon, 171 A.D.2d 752, 753 (2d Dept. 1991) (claim that defendant was denied materials to effectively cross-examine a prosecution witness).

Therefore, because the Appellate Division "expressly relied on a procedural default as an independent and adequate state ground" (Velasquez v. Leonardo, 898 F.2d 7, 9 [2d Cir. 1990]) in denying petitioner's unpreserved claim, his current claim is procedurally barred from habeas corpus review. See Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir. 1991) (failure to make objection at trial constitutes adequate procedural default under N.Y. C.P.L. § 470.05[2]); Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990).

Moreover, there is no reason for this Court to consider the merits of petitioner's procedurally barred claim. Petitioner's claim is not reviewable in this proceeding unless he is able to establish cause for the default and prejudice therefrom, or that he is actually innocent of the crimes for which he was convicted. See Coleman v. Thompson, 501 U.S. 722 at 748-51 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986); see also Bousley v. United States, 523 U.S. 614, 623 (1998); Schlup v. Delo, 513 U.S. 298, 327-28 (1995). Petitioner has not alleged any cause for his procedural default and he cannot show that he

has been prejudiced as a result. Nor has petitioner established, or even alleged, that he is actually innocent of the crime for which he was convicted. Therefore, petitioner's claim is not only unexhausted and "plainly meritless," but it is also procedurally barred from federal habeas corpus review.

POINT II

PETITIONER'S CLAIM THAT HIS STATEMENTS TO THE POLICE WERE
OBTAINED IN VIOLATION OF HIS RIGHT TO COUNSEL SHOULD BE DEEMED
EXHAUSTED BUT PROCEDURALLY BARRED BECAUSE PETITIONER DID NOT
FAIRLY PRESENT IT TO THE STATE COURTS AND HE MAY NO LONGER DO
SO; IN ANY EVENT, PETITIONER'S CONTENTION DOES NOT PRESENT A
FEDERAL CONSTITUTIONAL CLAIM (responding to Ground One of the
Petition).

This Court should reject petitioner's claim that his
statements to the detectives about the Calabrese homicide were
obtained in violation of his right to counsel and improperly
admitted at trial. See Petition for Writ of Habeas Corpus at 6.
This claim was not raised in petitioner's application for leave
to appeal to the New York Court of Appeals. Nonetheless, the
claim should be deemed exhausted, but procedurally barred,
because petitioner is now foreclosed from obtaining substantive
review of the claim in the state appellate courts and satisfying
the exhaustion requirement. Furthermore, petitioner's claim
regarding his post-arrest statements does not present a federal
constitutional question and, therefore, is not properly before
this Court.

As discussed (see Point I, supra), before a federal court
may grant relief on a ground raised in a habeas corpus petition,
the petitioner must have exhausted the remedies available in the
state courts. See 28 U.S.C. § 2254(b), (c); O'Sullivan v.
Boerckel, 526 U.S. 838, 842-45 (1999). The exhaustion doctrine

16

is satisfied if the claim has been "fairly presented" to the state courts, and that occurs where the petitioner has "employed the proper state law procedural vehicle so that the state courts were afforded the opportunity to consider the claims raised on the merits." Walker v. Dalsheim, 669 F.Supp. 68, 70 (S.D.N.Y. 1987) (citing Dean v. Smith, 753 F.2d 239 [2d Cir. 1985]); see also Picard v. Connor, 404 U.S. 270, 275 (1971) ("once [a] federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied").

In New York, a petitioner may satisfy the exhaustion requirement in regard to on-the-record claims by raising those claims on direct appeal to the Appellate Division and by then seeking to have the claims reviewed by the New York Court of Appeals. See generally Jones v. Vacco, 126 F.3d 408, 413-14 (2d Cir. 1997) (exhaustion requirement satisfied by raising constitutional claim in Appellate Division brief, at oral argument in Appellate Division, and again in leave letter to New York Court of Appeals); see also Grey v. Hoke, 933 F.2d at 119-20 (claims not fairly presented to New York courts where petitioner failed to include them in letter seeking permission to appeal to New York Court of Appeals from Appellate Division's affirmance of judgment); accord O'Sullivan v. Boerckel, 526 U.S. at 842-47 (failure to seek review in state's highest court, having taken one appeal to the state's lower level appellate

court, did not constitute fair presentation of claims to state courts).

In this case, petitioner did not exhaust in the state courts his claim that his right to counsel was violated because his statements were the product of an interrogation that occurred while he was in custody for unrelated charges on which he was allegedly represented by counsel. In fact, the confrontation-clause claim (see Point III, infra) was the only claim petitioner raised in his leave application. See Petitioner's Leave Application to the Court of Appeals.

Petitioner's claim is based upon a matter of record. Indeed, to support his claim on direct appeal, petitioner relied on the pre-trial suppression hearing transcript. See Petitioner's Appellate Division brief at 66; Petitioner's Reply brief at 5. Thus, for petitioner to have exhausted the claim in the state courts, he should have raised it in his application for leave to appeal to the New York Court of Appeals. He did not, however, do that.

Petitioner can no longer properly raise his claim in the state courts because the claim is based on the record from the judgment of conviction and, therefore, could only have been

raised on direct appeal.[5] Petitioner, however, has already taken the one direct appeal to which he is entitled. See generally St. Helen v. Senkowski, 374 F.3d 181, 183-84 (2d Cir. 2004) (per curiam); Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001); C.P.L. § 450.10(1). Thus, petitioner's claim is technically exhausted because he no longer has a right under New York State law to raise the claim. See 28 U.S.C. § 2254(c); Teague v. Lane, 489 U.S. 288, 297-98 (1989). Moreover, because the State's procedural rules no longer permit petitioner to present his claim to the highest state court, the federal court should deny the claim as if petitioner had brought the claim before that state court and the court decided the claim was barred from review, pursuant to the State's applicable procedural rule. See O'Sullivan v. Boerckel, 526 U.S. at 847.

"In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [the Court] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" St. Helen v. Senkowski, 374 F.3d 181, 184 (2d Cir. 2004) (quoting Bousley v. United States,

---

[5] Even if petitioner were to attempt to raise this claim in a motion to vacate judgment pursuant to N.Y. C.P.L. § 440.10, the claim would be procedurally barred under N.Y. C.P.L. § 440.10(2)(a) because the issue has been determined on the merits upon an appeal from the judgment.

523 U.S. at 622 [internal quotation marks and citations omitted]); Coleman v. Thompson, 501 U.S. at 732. In the instant case, petitioner fails to meet this standard and has failed to even allege "cause and actual prejudice, or that he is actually innocent." Thus, because petitioner cannot overcome the procedural bar, his right-to-counsel claim should not be reviewed by this Court.

Furthermore, even if there were no procedural bar to petitioner's claim, it still would not establish a ground for habeas relief. Petitioner claims, as he did on direct appeal, that his statements were the product of an interrogation that occurred while he was in custody for unrelated misdemeanor charges on which he was represented by counsel. Petitioner contends, therefore, that, under People v. Rogers, 48 N.Y.2d 167 (1979), his statements were procured in violation of his right to counsel under the New York Constitution. In Rogers, the New York Court of Appeals determined that, when a defendant is in police custody for a criminal charge on which he is represented by counsel, a derivative right to counsel attaches and custodial interrogation about any subject, whether related or unrelated to that charge, must cease. People v. Rogers, 48 N.Y.2d 167 (1979).

A federal court is authorized to entertain an application for a writ of habeas corpus on behalf of a state prisoner only

on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Accordingly, a claim that relies solely on the interpretation and application of state law does not present a basis for habeas corpus relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Here, petitioner claims that his statements to the detectives about the Calabrese homicide should have been suppressed because the statements were the product of an interrogation that occurred in violation of his Rogers derivative right to counsel.  However, because petitioner's claim is based solely on state law,[6] it is not reviewable here and is not a ground for habeas corpus relief.  See Jones v. Spitzer, 2005 WL 167605 at *6 n.14 (S.D.N.Y. Jan. 25, 2005) (the right to counsel under New York law developed independently from the federal right and is broader in scope).[7]  In fact, although

---

[6] It bears noting that this claim should also be deemed procedurally barred in light of the fact that, in his Appellate Division brief, petitioner never alerted the state court to a federal constitutional basis for the claim.  See Baldwin v. Reese, 541 U.S. 27, 32 (2004).  Indeed, petitioner did not cite any federal law in conjunction with the claim, nor did he make any reference to a constitutional amendment in relation to the claim.

[7] This and all other unpublished decisions have been provided to petitioner.

under the state constitution a defendant generally cannot be questioned with regard to any matter if he has representation on the charge for which he is in custody (People v. Burdo, 91 N.Y.2d 146 [1997]; Rogers, 48 N.Y.2d 167), under the federal constitution, such a defendant can be questioned with regard to unrelated matters.   See McNeil v. Wisconsin, 501 U.S. 171 (1991).

In any event, for the reasons stated in the People's Appellate Division Brief (pp. 34-41), petitioner's claim is meritless.  The derivative right to counsel did not apply here, because petitioner was arrested on bench warrants.  Thus, he was not in custody on the underlying charge for which he alleges he was represented by counsel.  See People v. Lopez, 16 N.Y.3d 375, 386 (2011); People v. Tyler, 43 A.D.3d 633, 635 (4th Dept. 2007); People v. Lovell, 267 A.D.2d 476, 477 (2d Dept. 1999). Moreover, the derivative right to counsel applies only where the police have knowledge, or should know, of the prior representation.  See People v. Lopez, 16 N.Y.3d 375; People v. Bing, 76 N.Y.2d 331 (1990).  Because petitioner has failed to establish that he was in fact represented by counsel or that the police knew or should have known of the alleged representation, his claim must fail.  Thus, the state court's rejection of petitioner's claim did not reflect an unreasonable application of clearly established federal law, or an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d)(1), (2).

In sum, petitioner's procedural default in failing to seek to have New York's highest appellate court review the claim in ground one of his petition results in a procedural bar to this Court's review of this claim. Accordingly, this Court should not entertain the claim. In any case, his right-to-counsel claim does not assert a federal constitutional question and does not provide a basis upon which habeas corpus relief should be granted.

## POINT III

PETITIONER'S CLAIM THAT TESTIMONY BY DETECTIVE McGINN DENIED HIM HIS RIGHT TO CONFRONT HIS ACCUSER IS MERITLESS; ERROR, IF ANY, WAS HARMLESS (responding to Ground Two of the Petition).

Petitioner claims, as he did on direct appeal, that Detective McGinn's testimony regarding Jeannot's statements constituted impermissible and prejudicial hearsay that violated his constitutional right to confront his accuser. See Petition for Writ of Habeas Corpus at 7. Contrary to petitioner's contention, however, the testimony was properly offered for the nonhearsay purpose of demonstrating what prompted petitioner to give his second statement. In any event, even if this Court were to find that the evidence was improperly presented, any error was harmless.

Detective McHugh and Detective McGinn testified that, when questioning petitioner, he initially denied any involvement in the shooting of Calabrese. However, Detective McGinn further testified that petitioner drastically changed his story after being told that he had been implicated in the murder by Jeannot. Specifically, McGinn told petitioner that McHugh was interviewing Jeannot, and that Jeannot was probably going to tell McHugh the truth as to what had occurred on the night of Calabrese's murder. Subsequently, McGinn informed petitioner that Jeannot had told the detectives the location of the murder

weapon.   Finally, McGinn told petitioner that Jeannot had admitted to shooting Calabrese and had said that petitioner paid him to do it.   At that point, petitioner said, "Okay, I will tell you the truth" (McHugh: T550-52; McGinn: T603-04, 619-26). Clearly, Detective McGinn's testimony regarding Jeannot's statements, was not only permissible, but necessary, in order to enable the jury to understand what had caused petitioner to change his original blanket denial of any involvement in the murder.

In Tennessee v. Street, 471 U.S. 409 (1985), the Supreme Court held that a defendant's rights under the Confrontation Clause are not violated by the introduction of statements of nontestifying individuals for the nonhearsay purpose of demonstrating what prompted a defendant to give a statement. See Street, 471 U.S. at 409; see also Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004).   Where evidence of a nontestifying witness's statements is offered to prove what happened when the defendant gave a statement, and not to prove what happened at the murder scene, it is not hearsay under traditional rules of evidence.   Street, 471 U.S. at 413.   Further, such nonhearsay evidence does not raise Confrontation Clause concerns.   Id. at 414.

Here, Detective McGinn testified regarding what he had said to petitioner just before petitioner gave his second statement,

which was vastly different from his first statement. As discussed in the People's Appellate Division Brief (pp. 42-52), this testimony was offered for the nonhearsay purpose of demonstrating the circumstances that fostered petitioner's second statement. Petitioner initially denied any involvement in the shooting; he told the detectives he was not even present when the shooting occurred (McHugh: T550-52; McGinn: T603-04).

Then, hours later, he admitted that he was not only present when the shooting occurred, but had driven the shooter (Jeannot) away from the scene and helped him dispose of the bullets, the gun, and his clothing (McGinn: T623-32; Cereghino: T673-83). Detective McGinn's testimony regarding his interview of petitioner would not have made sense if he had been precluded from explaining the sequence of events that triggered petitioner's second statement. It surely would not have been clear to the jury why, during the early morning hours of December 10, 2004, several hours after petitioner gave his initial statement, McGinn suddenly, and for no apparent reason, reentered petitioner's interview room and took another statement from him, which conflicted with his first statement.

Such a limitation on McGinn's testimony would have hindered the jury's ability to evaluate the truth of the testimony and the validity of petitioner's statements, and would have consequently "been at odds with the Confrontation Clause's very

26

mission -- to advance 'the accuracy of the truth-determining process in criminal trials.'" Street, 471 U.S. at 415 (quoting Dutton v. Evans, 400 U.S. 74, 89 [1970]). Clearly, therefore, the statements of Jeannot, offered for purposes other than establishing the truth of the matter asserted and only to demonstrate what prompted petitioner's second statement, were admissible and did not violate the Confrontation Clause. See Street, 471 U.S. at 409-16; Crawford, 541 U.S. at 59 n.9.

Moreover, the court delivered two extensive limiting instructions pertaining to the evidence of Jeannot's statements, one during the testimony of Detective McGinn, and another during the final jury charge (McGinn: T624; T930-31). In both limiting instructions, the court directed the jury that they were to consider the statements allegedly made by Jeannot, only when considering the circumstances under which petitioner made his statements, and that they were to completely disregard Jeannot's alleged statements when considering the evidence against petitioner. The court further instructed that the jury was not to consider whether Jeannot actually made the statements at issue, and if he did, whether or not Jeannot's statements were true (McGinn: T624; T930-31).

Jurors are presumed to abide by any limiting instructions the court gives. See United States v. Downing, 297 F.3d 52, 59 (2d Cir. 2002). Thus, any possible prejudice arising from the

27

testimony at issue was avoided by the court's thorough limiting instructions, which amply informed the jury that Jeannot's alleged statements were not to be considered for their truth. See Street, 471 U.S. at 411-12.

Clearly, therefore, the Appellate Division correctly held that petitioner's confrontation-clause claim was meritless. See People v. Orlando, 61 A.D.3d at 1002. Furthermore, petitioner has failed to establish that the Appellate Division's decision was contrary to, or was an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1).

Finally, there was overwhelming evidence of petitioner's guilt -- having nothing to do with the testimony at issue -- including petitioner's two inconsistent written statements, testimony that demonstrated petitioner's motive for the murder, a surveillance videotape depicting the relevant vehicles arriving and leaving the scene of the crime, cell phone records placing petitioner in the immediate vicinity of the crime just before and after the shooting, expert crime reconstruction evidence demonstrating that someone had yanked Calabrese's sweatshirt up over his head just before the shooting, and the murder weapon, which was found at the very spot where petitioner admitted he had seen Jeannot dispose of it. Accordingly, any possible error in admitting the testimony at issue was harmless

because it cannot be said that it had a "substantial and injurious effect or influence in determining the jury's verdict" in comparison with the other ample evidence against petitioner. Fry v. Pliler, 551 U.S. 112 (2007); Brecht v. Abrahamson, 507 U.S. 619 (1993).

## POINT IV

PETITIONER'S CLAIMS REGARDING THE ADMISSIBILITY OF THE STORAGE FACILITY VIDEOTAPE AND THE MANNEQUIN SHOULD BE DEEMED EXHAUSTED BUT PROCEDURALLY BARRED BECAUSE PETITIONER DID NOT FAIRLY PRESENT THEM TO THE STATE COURTS AND HE MAY NO LONGER DO SO; IN ANY CASE, PETITIONER IS NOT ENTITLED TO HABEAS CORPUS RELIEF ON THESE GROUNDS BECAUSE THEY ARE NOT COGNIZABLE ON FEDERAL REVIEW (responding to Grounds Three and Four of the Petition).

Petitioner claims that the videotape copy of the digital footage recorded by the storage facility surveillance cameras was admitted in evidence in violation of the best evidence rule because the videotape was not the "unedited original," and did not demonstrate a single, fluid stream of images. Petition for Writ of Habeas Corpus at 9. Petitioner further claims that the trial court abused its discretion when it permitted the People to use a demonstrative exhibit (a mannequin) to display the bullet trajectories. See id. at 10. These claims were not raised in petitioner's application for leave to appeal to the New York Court of Appeals. Nonetheless, the claims should be deemed exhausted, but procedurally barred, because petitioner is now foreclosed from obtaining substantive review of the claims in the state appellate courts and satisfying the exhaustion requirement. Furthermore, petitioner's claims do not present a constitutional issue that is cognizable in a habeas corpus petition.

As discussed (see Points I and II, supra), before a federal court may grant relief on a ground raised in a habeas corpus petition, the petitioner must have exhausted the remedies available in the state courts. See 28 U.S.C. § 2254(b), (c); O'Sullivan v. Boerckel, 526 U.S. at 842-45. Moreover, as discussed, a petitioner may satisfy the exhaustion requirement in regard to on-the-record claims by raising those claims on direct appeal to the Appellate Division and by then seeking to have the claims reviewed by the New York Court of Appeals. See Jones v. Vacco, 126 F.3d at 413-14; Grey v. Hoke, 933 F.2d at 119-20.

Petitioner did not raise the claims at issue in his application for leave to appeal to the New York Court of appeals; moreover, he can no longer properly raise the claims in the state courts because the claims are based on the record from the judgment of conviction and, therefore, could only have been raised on direct appeal. See generally Aparicio v. Artuz, 269 F.3d at 91; C.P.L. § 450.10(1). Thus, petitioner's claims are technically exhausted because he no longer has a right under New York State law to raise the claim. See 28 U.S.C. § 2254(c); Teague v. Lane, 489 U.S. at 297-98. Because the State's procedural rules no longer permit petitioner to present his claims to the highest state court, however, the federal court should deny the claims as if petitioner had brought the claims

31

before that state court and the court decided the claims were barred from review, pursuant to the State's applicable procedural rule. See O'Sullivan v. Boerckel, 526 U.S. at 847.

Moreover, there is no reason for this Court to consider the merits of petitioner's claims. In a habeas corpus proceeding, a federal court may reach the merits of a procedurally barred claim only in limited circumstances. As discussed (see Points I, and II, supra), the petitioner must establish cause for his procedural default and resulting prejudice, or he must establish that the federal court's failure to review his claim will result in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crimes for which he was convicted. See Coleman v. Thompson, 501 U.S. at 748-51; Murray v. Carrier, 477 U.S. at 496; see also Bousley v. United States, 523 U.S. at 623; Schlup v. Delo, 513 U.S. at 327-28.

Here, petitioner makes no showing at all with respect to those standards. He has not even alleged any cause for his procedural default, and, because his claims are patently meritless, he cannot show that he was prejudiced as a result. Furthermore, petitioner has not established that he is actually innocent of the crime of which he was convicted. In any case, petitioner's challenge to the state court's evidentiary rulings regarding the storage facility videotape and the mannequin used

to demonstrate the bullet trajectories, affords him no basis for relief.

It is well settled that state evidentiary rulings generally do not present federal questions or otherwise implicate the federal constitution. See Dunnigan v. Keene, 137 F.3d 117, 125 (2d Cir. 1998); Crane v. Kentucky, 476 U.S. 683, 689 (1986); Ohio v. Roberts, 448 U.S. 56, 66 (1979). Thus, a petitioner who challenges a state evidentiary ruling in federal court bears the heavy burden of demonstrating that the alleged erroneous evidentiary ruling was so pervasive as to have denied the petitioner a fundamentally fair trial. See Dunnigan v. Keene, 137 F.3d at 125; Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985); Taylor v. Scully, 708 F.2d 886, 891 (2d Cir. 1983). And, even then, "an error of constitutional dimensions will merit habeas relief only if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" Benjamin v. Greiner, 296 F.Supp.2d 321, 332 (E.D.N.Y. 2003) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 [1993]). Here, petitioner has failed to demonstrate that the challenged evidentiary rulings were erroneous, much less that they had a substantial and injurious effect in determining the jury's verdict.[8]

---

[8] Petitioner attempts to couch his claim regarding the storage facility videotape as one that presents a federal question by referring to the "Federal Best Evidence Rule" in his
(Continued...)

33

1.   The Storage Facility Videotape

Here, the videotape at issue depicted a vehicle, which could not be conclusively identified as petitioner's vehicle, driving northbound on Broadway.  That vehicle appeared to make a U-turn on Broadway and pulled to the curb.  At approximately 8:35 p.m., a second vehicle (presumably Calabrese's Infiniti) came into view and parked in front of the first vehicle.  At approximately 8:36 p.m., the first vehicle drove away and the second vehicle stayed where it was (Strigaro: T499-505).

As discussed in the People's Appellate Division Brief (pp. 53-59), the admission of the storage facility videotape did not violate the best evidence rule because the "unavailability of the original [was] satisfactorily explained. . . .'" People v. Vickio, 50 A.D.3d 1479, 1480 (4th Dept. 2008) (quoting People v. Grasso, 237 A.D.2d 741, 742 (3d Dept. 1997); accord Fed R. Evid. Rule 1004.  Moreover, the fact that the videotape had gaps and did not depict the events of December 3, 2004, in a single, fluid stream of images, goes to the weight of the evidence and

---

petition (see Petition for Writ of Habeas Corpus at 9); however, as the Second Circuit has stated, "not 'every error of state law can be transmogrified by artful argumentation into a constitutional violation.'" Ponnapula v. Spitzer, 297 F.3d 172 (2d Cir. 2002) (quoting Sanna v. Dipaolo, 265 F.3d 1, 12 [1st Cir. 2001]).  The Court has also cautioned against equating the federal rules of evidence with constitutional requirements.  See United States v. Fell, 360 F.3d 135 (2d Cir. 2004).

not its admissibility.   See United States v. Sovie, 122 F.3d 122, 127-28 (2d Cir. 1997).   Clearly, therefore, petitioner has not established that the state court's rejection of this claim was contrary to, or was an unreasonable application of, clearly established federal law.   See 28 U.S.C. § 2254(d)(1).   Thus, habeas relief is not warranted.

Furthermore, even if the admission of the videotape could somehow be viewed as error, any such error was surely harmless. See Fry v. Pliler, 551 U.S. 112; Brecht v. Abrahamson, 507 U.S. 619.   There was overwhelming proof of petitioner's guilt (see Point II, supra), having nothing to do with the content of the videotape.   Indeed, all that admission of the videotape accomplished for the prosecution was to possibly place petitioner at the scene of the murder.   Petitioner himself admitted in his statements to the detectives that he was present in the alley, standing right in front of Calabrese when Calabrese was shot (McGinn: T627-630).   Thus, to the extent admission of the videotape was improper, petitioner's statements brought out the same evidence and worse.

2.   The Mannequin

During the trial, the People presented a demonstrative exhibit, prepared by Detective Kovar, who specialized in crime reconstruction and the preparation of demonstrative courtroom

exhibits. The exhibit displayed the probable trajectories of the bullets that hit Calabrese and was based on the findings of Detective Kovar and Dr. DeMartino, who had performed the autopsy on Calabrese. The exhibit consisted of a mannequin dressed in a sweatshirt that was the exact brand, style, and size of the sweatshirt Calabrese had been wearing when he was shot. Holes were put in the new sweatshirt, in the same places where the bullet holes were found in Calabrese's sweatshirt. Finally, rods were placed through the holes in the sweatshirt in order to demonstrate the bullet trajectories (T798-99; Kovar: T812-22).

Perhaps the most vital factual discrepancy that the jury had to resolve during petitioner's trial was the question of where Jeannot, Calabrese, and petitioner were positioned at the time of the shooting. While petitioner claimed in his written statement that Jeannot was behind him and in front of Calabrese when he shot Calabrese, it was the People's contention that Jeannot was in front of petitioner and behind Calabrese, and that petitioner forcibly yanked Calabrese's sweatshirt up over his head so that he would not be able to stop Jeannot from shooting him from behind. Accordingly, it was critical for the People to present every possible piece of evidence concerning the bullet trajectories, in support of their theory that Jeannot was behind Calabrese at the time of the shooting and that the sweatshirt had been pulled up over Calabrese's head.

The accuracy of the exhibit was established, given that it was designed based on Dr. DeMartino's medical findings regarding Calabrese's wounds, and Detective Kovar's microscopic analysis of the holes in Calabrese's sweatshirt (Kovar: T809-22). Hence, as discussed in the People's Appellate Division Brief (pp. 60-64), the value of the evidence at issue far outweighed its potential for prejudice, and the admissibility of the demonstration was within the court's sound discretion. See United States v. Skinner, 425 F.2d 552 (C.A.D.C. 1970). Accordingly, petitioner has not established that the state court's rejection of this claim was contrary to, or was an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1).

In any event, any error on the court's part for admitting the exhibit was harmless. See Fry v. Pliler, 551 U.S. 112; Brecht v. Abrahamson, 507 U.S. 619. There was overwhelming proof of petitioner's guilt, having nothing to do with the demonstrative evidence at issue. Moreover, there was additional proof, outside of the exhibit, regarding the bullet trajectory (DeMartino: T754-71; Kovar: T802-22). Hence, if the admission of the exhibit was error, and it was not, that error would be harmless.

In sum, petitioner's claims regarding the admissibility of the storage facility videotape and the mannequin are

procedurally barred and do not provide a basis upon which habeas corpus relief should be granted.

POINT V

PETITIONER'S CLAIM THAT HE WAS DENIED A FAIR TRIAL DUE TO
PROSECUTORIAL MISCONDUCT IS PROCEDURALLY BARRED.   MOREOVER,
PETITIONER IS NOT ENTITLED TO HABEAS CORPUS RELIEF ON THIS
GROUND BECAUSE IT DOES NOT RAISE A MERITORIOUS CLAIM (responding
to Ground Five of the Petition).

Petitioner asserted on appeal that the prosecutor's
summation was improper because the prosecutor "invited the jury
to act like 'Columbo' and investigate the storage facility video
to determine whether the [petitioner's] automobile's license
plate was 'obstructed,' arguing that the [petitioner] placed a
piece of tape over the license plate."   Petition for Writ of
Habeas Corpus at 11A.   Petitioner contends that, by suggesting
there was a piece of tape over his license plate in the
surveillance video, the prosecutor improperly referred to
matters not in evidence, given that there was no mention of the
tape during the trial.   See id.   Petitioner's claim is
procedurally barred and wholly without merit.

Petitioner failed to object to the prosecutor's summation
comments (T880-81).   Therefore, as the People noted in their
Appellate Division Brief (pp. 68-69), petitioner did not
preserve his prosecutorial misconduct claim for appellate
review.   Agreeing with the prosecution's assessment, the
Appellate Division specifically noted that petitioner's
contention was "unpreserved for appellate review" (People v.

39

Orlando, 61 A.D.3d at 1002).   Because the Appellate Division
"expressly relied on a procedural default as an independent and
adequate state ground" (Velasquez v. Leonardo, 898 F.2d at 9) in
denying    petitioner's    unpreserved    claim,    his    current
prosecutorial-misconduct claim is procedurally barred from
habeas corpus review.   See Glenn v. Bartlett, 98 F.3d 721, 724-
25  &  n.3  (2d  Cir.  1996)  (state  decision  that  denied
prosecutorial misconduct claim as not preserved for appellate
review represented an independent and adequate state procedural
ground even though court addressed merits of claim "in the
interests of justice"); Vargas v. Keane, 86 F.3d 1273, 1280
(2d Cir.), cert. denied, 519 U.S. 895 (1996) (petitioner's
failure to preserve for appellate review claimed error in
prosecutor's summation rendered habeas corpus claim on that
ground procedurally barred).

Furthermore, there is no reason for this Court to consider
the merits of petitioner's claim.   As discussed (see Points I,
II, and IV, supra), in a habeas corpus proceeding, a federal
court may reach the merits of a procedurally barred claim only
in limited circumstances.   The petitioner must establish cause
for his procedural default and resulting prejudice, or he must
establish that he is actually innocent of the crimes for which
he was convicted.   See Coleman v. Thompson, 501 U.S. at 748-51;

Murray v, Carrier, 477 U.S. at 496; see also Bousley v. United
States, 523 U.S. at 623; Schlup v. Delo, 513 U.S. at 327-28.

As discussed, petitioner makes no showing at all with
respect to those standards.   He has not even alleged any cause
for his procedural default, much less demonstrated that he was
prejudiced as a result.    Furthermore, petitioner has not
established that he is actually innocent of the charge.

In any case, petitioner's challenges to the prosecutor's
summation afford him no basis for relief.    Generally,    issues
concerning the propriety of comments made by a prosecutor do not
present meritorious federal questions.   See, e.g., United States
v. Robinson, 485 U.S. 25, 31 (1988) (in light of comments by
defense counsel, prosecutor's statement in summation did not
violate his constitutional rights); United States v. Tocco,
135 F.3d 116, 130 (2d Cir.), cert. denied sub nom. Ferranti v.
United States, 523 U.S. 1096 (1998) (same).   Indeed, the Supreme
Court has held that a criminal conviction "is not to be lightly
overturned on the basis of a prosecutor's comments standing
alone" in an otherwise fair proceeding.   United States v.
Newton, 369 F.3d 659, 680 (2d Cir. 2004); see also Floyd v.
Meachum, 907 F.2d 347, 353 (2d Cir. 1990) ("The appropriate
standard of review for a claim of prosecutorial misconduct on a
writ of habeas corpus is the narrow one of due process, and not

the broad exercise of supervisory power.") (internal quotation marks and citations omitted).

"In order to reach the level of a constitutional violation," a prosecutor's remarks must cause the petitioner "substantial prejudice" and "'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986); accord United States v. Salameh, 152 F.3d 88, 98 (2d 1998); United States v. Rivera, 22 F.3d 430, 437 (2d Cir. 1994). In other words, the remarks must constitute "egregious misconduct" in order to warrant relief. Donnelly v. De Christoforo, 416 U.S. 637, 747 (1974); United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002).

Here, no such misconduct occurred. During his closing remarks, the prosecutor stated in pertinent part, "[l]et's get back to that license plate. Interesting piece of evidence for Columbo fans . . . . It's not on there . . . . What is the obstruction . . . . I submit to you it's a strip of tape" (T880). Although the prosecutor did make a brief reference to "Columbo fans" during his closing remarks, not once during his summation did the prosecutor "invite the jury to act like 'Columbo'" (Petition for Writ of Habeas Corpus at 11A), or to engage in any improper investigation of its own.

Moreover, the prosecutor's remarks constituted fair comment on the surveillance tape, which was in evidence and did, in fact, demonstrate that the license plate on the vehicle believed to be petitioner's was not visible (Strigaro: T492-506). Therefore, the prosecutor's suggestion that the obstruction might have been a piece of tape over the license plate merely called upon the jury to draw a reasonable inference from the evidence. Hence, for the reasons set forth in the People's brief to the Appellate Division (pp. 68-71), it is evident that petitioner suffered no prejudice from the single remark the prosecutor made during his summation -- much less substantial prejudice.

However, even if the prosecutor exceeded the broad bounds of permissible advocacy through the summation comment at issue, petitioner would not be entitled to relief. In assessing whether a prosecutor's improper comments have substantially prejudiced a petitioner and whether the error was harmless, federal courts consider three factors: 1) the severity of the prosecutor's conduct; 2) the measures taken by the trial court to cure the error and prevent prejudice; and 3) whether the petitioner's conviction was certain absent the prejudicial conduct. See Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991). Additionally, the federal court may consider whether or not the

petitioner objected to the challenged comments, on the theory that a petitioner's failure to object may indicate that the remark was not perceived as having a substantial adverse effect or as advancing an improper cause.  See Cargill v. Turpin, 120 F.3d 1366, 1379 (11th Cir. 1997), cert. denied, 523 U.S. 1080 (1998); Nichols v. Scott, 69 F.3d 1255, 1278 (5th Cir. 1995), cert. denied, 518 U.S. 1022 (1996).

Here, any error in the prosecutor's conduct was harmless in light of the speculative nature of the alleged prejudice, the propriety of the prosecutor's conduct as a whole, and the overwhelming evidence of petitioner's guilt.  Indeed, as shown, supra, petitioner's culpability was compellingly established by the evidence the People educed at trial.  Thus, in light of the powerful proof of petitioner's guilt, it is plain that the comments at issue could not have prejudiced petitioner, much less to a substantial degree.

In sum, petitioner's claim is procedurally barred and, in any case, fails to present a meritorious constitutional question.  Accordingly, petitioner is not entitled to federal habeas corpus relief on this ground.

## POINT VI

PETITIONER'S CLAIM CHALLENGING THE COURT'S CHARGE IS PROCEDURALLY BARRED AND DOES NOT RISE TO THE LEVEL OF A CONSTITUTIONAL VIOLATION (responding to Ground Seven of the petition).

Petitioner contends that he is entitled to habeas corpus relief because the trial court's charges regarding circumstantial evidence and motive were improper and denied him a fair trial.  Petitioner further alleges that the trial court improperly failed to provide a detailed charge regarding demonstrative evidence and the use of models.  Petition for Writ of Habeas Corpus at 11A.[9]  Petitioner's claim should be denied because it is procedurally barred and meritless.

Petitioner's claim is procedurally barred from federal habeas corpus review because the state court's denial of his claim on preservation grounds constituted an independent and adequate state procedural ground that bars habeas review.  See Coleman v. Thompson, 501 U.S. at 729; see also Bacchi v. Senkowski, 884 F.Supp. 724, 732 (E.D.N.Y. 1995), aff'd, 101 F.3d 683 (2d Cir. 1996).  Here, as the prosecution argued in its brief to the Appellate Division (pp. 73-74, 76, 78-79),

_____

[9] In making the instant claim, petitioner gives a one-sentence synopsis of the arguments made below.  Specifically, petitioner states only, "The trial court improperly charged the jury."  Because his claim is overly-generalized to the point of vagueness, respondent relies upon the arguments that petitioner presented to the Appellate Division.

petitioner did not preserve any of his claims regarding the trial court's jury charge for appellate review. As a result, the Appellate Division, citing N.Y. C.P.L. § 470.05(2) and People v. Gray, 86 N.Y.2d 10 (1995), ruled that petitioner's jury-charge claims were unpreserved for appellate review. See People v. Orlando, 61 A.D.3d at 1002. Because the Appellate Division "expressly relied on a procedural default as an independent and adequate state ground" (Velasquez v. Leonardo, 898 F.2d at 9) in denying petitioner's unpreserved claim, his current argument is procedurally barred from habeas corpus review. See Fama v. Commissioner of Correctional Services, 235 F.3d 804, 810-11 & n.4 (2d Cir. 2002).

Moreover, there is no reason for this Court to consider the merits of petitioner's jury-instruction claim. Indeed, petitioner has not established cause for his procedural defaults and resulting prejudice, or that he is actually innocent. See Coleman v. Thompson, 501 U.S. at 748-51; Murray v. Carrier, 477 U.S. at 496; see also Bousley v. United States, 523 U.S. at 623; Schlup v. Delo, 513 U.S. at 327-28.

Next, petitioner's claim should be rejected because it does not present a federal question reviewable in this habeas corpus proceeding. See 28 U.S.C. § 2254(a). The correctness of a state trial court's jury charge is ordinarily a matter of state law that does not raise a meritorious federal constitutional

question.  Before a petitioner may be entitled to habeas corpus relief, the petitioner must show not merely that the challenged instruction was "undesirable, erroneous, or even 'universally condemned,'" but that it violated some right guaranteed to him by the United States Constitution.  Cupp v. Naughten, 414 U.S. 141, 146 (1973); see also Middleton v. McNeil, 541 U.S. 433, 437 (2004) ("not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation").

Petitioner has an "especially heavy" burden when complaining that his constitutional rights were violated by the trial court's failure to give a particular instruction. Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 [1977]).  Here, petitioner makes no effort to demonstrate how the alleged errors in the court's jury charge and the court's failure to give a detailed charge regarding demonstrative evidence and the use of models violated his rights under the United States Constitution.

Review of the record demonstrates that the trial court issued thorough and proper instructions on circumstantial evidence (T918-20) and motive (932-33).  Moreover, petitioner, who never requested that the court deliver a charge regarding demonstrative evidence and the use of models during the trial, fails to specify what charge should have been given to the jury

47

regarding demonstrative evidence and models, and how he was prejudiced by the court's failure to give the charge. Accordingly, as discussed fully in respondent's brief to the Appellate Division (pp. 72-81), petitioner's claims regarding the court's charge are uniformly meritless, and even if there was error in the court's charge, which there was not, any such error was harmless.

Accordingly, petitioner's claims regarding the court's jury charge are procedurally barred from federal habeas corpus review. In any event, the claims are without merit and do not present a basis for habeas corpus relief.

POINT VII

PETITIONER'S    INEFFECTIVE-ASSISTANCE-OF-COUNSEL    CLAIMS
SHOULD  BE  DEEMED  EXHAUSTED  BUT  PROCEDURALLY  BARRED  BECAUSE
PETITIONER  DID  NOT  FAIRLY  PRESENT  THEM  TO  THE  STATE  COURTS  AND
HE  MAY  NO  LONGER  DO  SO;  IN  ANY  CASE,  THE  CLAIMS  ARE  MERITLESS
(responding to Ground Eight of the Petition).

On direct appeal, petitioner claimed that he was denied the
effective  assistance  of  counsel  for  two  reasons.   First,
petitioner  contended  that  his  counsel  improperly  failed  to
object to the admission of the surveillance videotape on the
ground that the People had not laid a proper foundation for the
tape  to  be  entered  in  evidence.   See  Petitioner's  Appellate
Division  brief  at  101-03.   Second,  petitioner  argued  that  his
counsel  was  ineffective  for  failing  to  assert  a  Rogers
suppression  claim,  based  on  New  York's  derivative  right  to
counsel.   See  Petitioner's  Appellate  Division  brief  at  103-04.
Petitioner  ostensibly  raises  the  same  ineffective-assistance
claims  in  his  application  for  habeas  corpus  relief.   See
Petition for Writ of Habeas Corpus at 11A.[10]

---

[10] Petitioner  contends  for  the  first  time  in  his  petition,
that  trial  counsel  was  ineffective  because  he  failed  "to
challenge [the] theory of the crime by using forensic evidence
available  at  the  trial  to  prove  that  the  D.A.  theory  of  the
crime  was  invalid  on  it's  merit."   Petition  for  Writ  of  Habeas
Corpus at 11A.  Petitioner did not, however, raise this claim in
his  brief  to  the  Appellate  Division,  or  in  his  leave  application
to  the  Court  of  Appeals.   Moreover,  because  petitioner's  newly
minted  claim  seems  to  involve  matters  that  are  not  reviewable
from  the  record,  it  is  unexhausted.   28 U.S.C.  § 2254(c);  see
(Continued...)

These claims were not raised in petitioner's application for leave to appeal to the New York Court of Appeals. Nonetheless, the claims should be deemed exhausted, but procedurally barred, because petitioner is now foreclosed from obtaining substantive review of the claims in the state appellate courts and satisfying the exhaustion requirement. Furthermore, petitioner's claims should be rejected because they are uniformly meritless.

As discussed, _supra_, the sole issue petitioner addressed in his application for leave to appeal to the Court of Appeals involved his confrontation-clause claim. Petitioner's on-the-record ineffective-assistance claims were not raised in petitioner's application for leave to appeal to the Court of Appeals. _See_ 28 U.S.C. § 2254(b), (c); O'Sullivan v. Boerckel, 526 U.S. at 842-45; Jones v. Vacco, 126 F.3d at 413-14; Grey v. Hoke, 933 F.2d at 119-20. Thus, the claims should be deemed

---

Ellman v. Davis, 42 F.3d at 147. Accordingly, as discussed (see Point I, _supra_), petitioner's application for a writ of federal habeas corpus may be dismissed as a mixed petition. This Court can, however, still reject the merits of petitioner's unexhausted claim, as well as petitioner's remaining exhausted (albeit procedurally-barred and/or meritless) claims. See Rhines v. Weber, 544 U.S. at 277; Goines v. Walker, 54 F.Supp.2d at 155-56. Notably, petitioner fails to specify what "forensic evidence" he is referring to, or how the purported evidence would have disproved the People's theory of the crime. Thus, petitioner's claim is "plainly meritless." Rhines v. Weber, 544 U.S. at 277.

exhausted, but procedurally barred.   See 28 U.S.C. § 2254(c); Teague v. Lane, 489 U.S. at 297-98.

Moreover, there is no reason for this Court to consider the merits of petitioner's procedurally barred ineffective-assistance claims.   Petitioner has not shown cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or that the federal court's failure to review his claim will result in a fundamental miscarriage of justice -- i.e., that he is actually innocent of the crimes for which he was convicted.   See Coleman, 501 U.S. at 748-51; Murray v. Carrier, 477 U.S. at 496; see also Bousely v. United States, 523 U.S. at 623.   In any event, all of petitioner's ineffective-assistance claims should be rejected because they are utterly meritless.   The record establishes that counsel's representation of petitioner was entirely effective.

The standard by which a claim of ineffective assistance of counsel must be determined was set forth in Strickland v. Washington, 466 U.S. 668 (1984).   A petitioner seeking relief on this ground must establish that counsel's performance was "outside the wide range of professionally competent assistance," and that there exists a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different."   Strickland, 466 U.S. at 690, 694.   Further, in order to prevail on a claim of ineffective assistance of

counsel, petitioner must overcome the strong presumption that defense counsel rendered effective assistance (see Strickland, 466 U.S. at 686; United States v. Cronic, 466 U.S. 648, 658 [1984]), and demonstrate the absence of strategic or other legitimate explanations for the challenged conduct (see Mohamed v. Portuondo, 2004 WL 884072 *9 [E.D.N.Y. March 11, 2004]). Finally, petitioner must establish that the state court's decision on this issue was objectively unreasonable. See 28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. at 402-12. Applying this standard, petitioner has failed to meet his burden of proving ineffectiveness.

As to petitioner's claim that counsel was ineffective for failing to object to the admission of the surveillance videotape, as discussed in the prosecution's brief to the Appellate Division (pp. 84-85), the prosecution laid a proper foundation for admission of the videotape; thus, counsel correctly refrained from making a frivolous objection to its admission. See Hinkle v. Randle, 271 F.3d 239 (6th Cir. 2001) (failure to object is not prejudicial if the objection would not have been sustained). Moreover, in light of the overwhelming proof of petitioner's guilt, separate and apart from the videotape, admission of the videotape into evidence did not deny petitioner a fair trial. Consequently, even if counsel's

failure to object constituted error, it does not entitle petitioner to any relief.

Next, as is discussed fully in the prosecution's brief to the Appellate Division (pp. 85-86), counsel undoubtedly recognized that there was no colorable basis for suppression based on a Rogers claim (see Point II, supra). Consequently, he was not ineffective for failing to make a meritless suppression argument that had little or no chance of success. See United States v. De La Pava, 268 F.3d 157, 163 (2d Cir. 2001) (counsel will not be found ineffective if the underlying claim is unmeritorious). Moreover, there was no prejudice resulting from defense counsel's alleged errors.

Petitioner's complaints aside, the totality of the circumstances demonstrates that counsel furnished meaningful representation, and petitioner has not established otherwise. Counsel moved for the suppression of incriminating evidence, conducted pre-trial hearings, conducted voir dire as to the prospective jurors, objected to the introduction of evidence (including the mannequin exhibit, see Point IV, supra), and gave persuasive opening and closing statements.

In sum, therefore, not only are petitioner's ineffective-assistance claims procedurally barred, but, as the state court concluded, petitioner has also failed to establish that he was denied the effective assistance of counsel. That decision was

entirely reasonable, and should not be disturbed in this habeas corpus proceeding. <u>See</u> 28 U.S.C. § 2254(d)(1). Accordingly, petitioner's habeas corpus petition should be denied in all respects.

CONCLUSION

THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DISMISSED, OR, IN THE ALTERNATIVE, THE PETITION SHOULD BE DENIED IN ITS ENTIRETY.

Dated:  Mineola, New York
        January 17, 2012

Respectfully submitted,

Kathleen M. Rice
District Attorney, Nassau County
Attorney for Respondent
262 Old Country Road
Mineola, New York 11501
(516) 571-3800

By: _____/s/_____
        SARAH S. RABINOWITZ

Robert A. Schwartz
Sarah S. Rabinowitz
   Assistant District Attorneys
       Of Counsel

# Certificate of Service

I hereby certify that, on January 17, 2012, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon:

Mark Orlando
Petitioner Pro Se
DIN# 05-A-4730
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

Kathleen M. Rice
District Attorney, Nassau County
Attorney for Respondent
262 Old Country Road
Mineola, New York 11501
(516) 571-3800

By: Sarah S. Rabinowitz