STATE OF NEW YORK : NASSAU COUNTY

SUPREME COURT PART 11

- - - - - - - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK,

-against-

MARK ORLANDO,

Defendant.

SCI/IND. NO. 167N-05

TRIAL

- - - - - - - - - - - - - - - - - - - -X

262 Old Country Road
Mineola, New York
June 2, 2005

B e f o r e:

HON. DAVID P. SULLIVAN, Supreme Court Justice

A p p e a r a n c e s:

HON. DENIS DILLON
District Attorney, Nassau County
By: ROBERT T. HAYDEN, ESQ.
Assistant District Attorney

DENNIS LEMKE, ESQ.
Attorney for Defendant
114 Old Country Road
Mineola, N.Y. 11501

Mary Ocskai
Official Court Reporter

COPY

THE CLERK: Case on trial, indictment 167N-05, People versus Mark Orlando.

Appearances for the record, please.

MR. HAYDEN: Robert T. Hayden for the People, Your Honor.

THE CLERK: Representing Mr. Orlando.

MR. LEMKE: Dennis Lemke. We're ready.

THE CLERK: People ready?

MR. HAYDEN: Yes.

THE CLERK: Let the record reflect the presence of Mr. Orlando. The prospective jurors are not in the courtroom at this time.

THE COURT: Trial continued.

Just for the record I have indicated already to the potential jury pool, I will continue to indicate to the next pool of jurors, that this Court will not be sequestering the jury on this case.

Also just for the record, I note no requests have been made to transcribed the voir dire. That is not being done.

MR. LEMKE: That is understood. Correct.

THE COURT: Mr. Lemke, I gave Mr. Hayden a copy this morning and I want to give you a copy too, I have a copy of Judge Honorof's short order with respect to the hearings.

Any preliminary matters before I bring the remaining prospective jury pool in?

MR. LEMKE: None, Your Honor.

MR. HAYDEN: I have one brief thing, Your Honor. I have a copy of prior convictions of one of my witnesses, Tommy Flores. I have a copy for the Court, and I have one for Mr. Lemke as well.

MR. LEMKE: Acknowledge receipt. Thank you, Your Honor.

THE CLERK: We will mark this as Court exhibit number V, Judge.

THE COURT: Court exhibit V.

We're going to bring the prospective jury panel in.

THE COURT OFFICER: Panel entering.

THE COURT: Good morning, everyone. This courtroom is the one I use. I like it better. It's more intimate, you know. I don't feel like I am shouting.

What we're going to do is continue the process you observed yesterday. What I mean by that is Mr. Paoli, my clerk, will randomly pick fourteen names out to sit here, and I will ask you some questions, and then the attorneys will ask you some questions. Okay.

THE CLERK: When you hear your name called please bring your belongings up, the questionnaires, and

the court officer will direct you to your seat in the jury box.

For seat number one, Michael Petrizi, P-E-T-R-I-Z-I.

Seat number two, Michael Asquina, A-S-Q-U-I-N-A.

Mary Marino, M-A-R-I-N-O, seat number three.

Seat number four Anthony Lomangino, L-O-M-A-N-G-I-N-O.

Seat number five, Dara Addonizio, A-D-D-O-N-I-Z-I-O.

Seat number six, Katelyn Agostinacchio, A-G-O-S-T-I-N-A-C-C-H-I-O.

Seat number seven, Jahamvikabe Pandya, P-A-N-D-Y-A.

Set number eight, Christopher Delaney, D-E-L-A-N-E-Y.

Seat number nine, George Waugh, W-A-U-G-H.

Seat number ten, Nabila Yaeoub, Y-A-E-O-U-B.

Rena Escueta, E-S-C-U-E-T-A.

Jody Hirsh, H-I-R-S-H.

Seat thirteen, Jennifer Byfield Williams.

Sagrario Rodriguez.

THE COURT: Good morning, ladies and gentlemen, I appreciate your patience. I know this process is a lot of delays, and you were waiting this

morning and I apologize. Once we get a jury, though, the case will move along quickly, and as I indicated, all of you yesterday, we give you the, we say two weeks from this Monday, but, you know, I anticipate getting the case to the jury, that is to deliberate, prior to that. I think I will keep it moving. So, I make that promise to you.

You heard everything we discussed yesterday. I am going, I will talk to you a little bit this morning in a little more detail than I did with the second group yesterday.

In the first row, you heard the basic principles of law that the Court told you about yesterday. If anyone has any problems following the law, raise your hand now. In either row.

Anybody in the front row have a problem with the time element, two weeks?

I will start here.

Yes, ma'am. What is your name? Number seven.

You have a problem sitting for approximately two weeks?

A PROSPECTIVE JUROR: Yes.

THE COURT: Got some commitments or something.

A PROSPECTIVE JUROR: I have back problem.

THE COURT: Medical condition.

A PROSPECTIVE JUROR: Yes.

THE COURT: You wouldn't be able to concentrate on the case.

Any objection?

MR. HAYDEN: No.

MR. LEMKE: No. Consent.

THE COURT: You can step down, ma'am.

You have a problem, number six.

A PROSPECTIVE JUROR: I have a wedding next Friday. My roommate is getting married. I am in the wedding party. So, I don't know.

THE COURT: Consent?

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

THE COURT: Enjoy the wedding.

Yes.

A PROSPECTIVE JUROR: I have, I am a teacher, end of the year is coming up. My kids have finals and regents and I can't abandon them.

THE COURT: Sure. Any objection?

MR. HAYDEN: No.

MR. LEMKE: None, Your Honor.

THE COURT: My wife's a teacher too. I understand. Good luck.

THE COURT: Anyone else in the front row?

How about the second row?

Ma'am, did you have your hand raised, Miss Yacoub?

A PROSPECTIVE JUROR: Yes. I have a business and the first three days of the week is the worse days for me. I cannot leave.

THE COURT: You feel because of that you wouldn't be able to sit here and be fair and impartial?

A PROSPECTIVE JUROR: Exactly.

THE COURT: Any objection, counsel.

MR. HAYDEN: No.

MR. LEMKE: None, Your Honor.

THE COURT: Bear in mind that all this does is get you to where the attorneys will talk to you. Because you're sitting here doesn't mean you will be on the jury.

THE COURT: Good luck. Did you have your hand raised.

A PROSPECTIVE JUROR: Yes.

THE COURT: You have a problem with the time element?

A PROSPECTIVE JUROR: I have internship, summer classes.

THE COURT: Okay. Any objection?

Miss Hirsh?

A PROSPECTIVE JUROR: I can't provide child

care for my kids that long a time. Thought a couple days but I can't do it that long.

THE COURT: Any objection.

MR. HAYDEN: None.

MR. LEMKE: No.

THE COURT: Step down. Let the commissioner know too.

A PROSPECTIVE JUROR: I thought a couple of days I could do it but I can't do that long. Thanks.

THE COURT: Anybody else just with the time element, or with the ability to follow the law as I give it to you? No problem with that.

I will just ask you a couple of questions to enable the attorneys to get through the paperwork so they can be prepared when they get up to talk to you.

Maybe we should fill the box. Let's fill the seats. Give me one minute. We will fill the seats.

THE CLERK: Jonathan Punzone, P-U-N-Z-O-N-E.

No answer.

Refer that to the commissioner of jurors, Judge.

Kenneth Wall. Seat number five.

Seat number six Jill Damato, D-A-M-A-T-O. Seat number six.

Number seven, Rosemarie Sparrow, S-P-A-R-R-O-W.

Number seven.

Lori Dworkin, D-W-O-R-K-I-N, number ten.

Jessica Sakhaee, S-A-K-H-A-E-E, number eleven.

And seat number twelve, Norman Basner, B-A-S-N-E-R.

THE COURT OFFICER: Got two more.

THE COURT: With respect to the people who just took a seat, any problem with respect to the time element?

Yes, ma'am.

A PROSPECTIVE JUROR: I am a reading teacher. I have a lot of things to wrap up for the end of the year, testing and --

THE COURT: Right.

A PROSPECTIVE JUROR: Thank you.

THE COURT: You have the same problem as the other young lady had.

Any objection?

MR. HAYDEN: No.

MR. LEMKE: None.

THE COURT: You're Miss Sparrow.

Yes, ma'am.

A PROSPECTIVE JUROR: Same thing. I am a teacher.

THE COURT: Okay. Your name.

A PROSPECTIVE JUROR: Damato.

THE COURT: Any objection?

MR. HAYDEN: No.

MR. LEMKE: No.

THE COURT: Thank you.

Sir, did you have your hand up.

A PROSPECTIVE JUROR: Yes. I travel a lot on my job. On the thirteenth I am out of the city.

THE COURT: With all that going on you wouldn't be able to be fair and impartial.

A PROSPECTIVE JUROR: I would be out all that week.

THE COURT: You're out. I am sorry. Didn't hear you.

Any objection?

MR. HAYDEN: No.

MR. LEMKE: No.

THE COURT: That is Mr. Wall.

A PROSPECTIVE JUROR: Yes.

THE COURT: In the back row.

Your name, sir.

A PROSPECTIVE JUROR: Basner. I have a medical procedure scheduled for next week.

THE COURT: Consent?

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

THE COURT: You can step down. Good luck.

THE COURT: And, yes, ma'am.

A PROSPECTIVE JUROR: I have a medical problem. I am going for testing now.

THE COURT: Okay. No problem. On consent.

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

THE COURT: You can step down.

THE CLERK: Ralph Esposito, E-S-P-O-S-I-T-O. Seat number five.

Patarawan Charoenray, C-H-A-R-O-E-N-R-A-Y.

THE COURT: Sir, ma'am, anything so far?

A PROSPECTIVE JUROR: Yes. Two weeks is too long for me for my company because we only have four person for each department.

THE COURT: Okay.

THE COURT: Any objection.

MR. HAYDEN: No.

MR. LEMKE: None, Your Honor.

THE COURT: Okay, ma'am. Thank you.

I will just do a couple of questions so the attorneys can hear and then they'll come up and talk to you.

In the front row, anybody have any relative or

close friend or anyone you know in law enforcement?

A PROSPECTIVE JUROR: I am, yes, sir. I am a detective NYPD.

THE COURT: Okay.

A PROSPECTIVE JUROR: Been a cop for eighteen years. Work for narcotics now. Been a detective for six.

THE COURT: And, you heard obviously there's going to be a lot of police officers here from Nassau County.

A PROSPECTIVE JUROR: Yes.

THE COURT: But you also heard the admonitions that I have given and the attorneys have spoken about with respect to judging credibility of witnesses. No greater, no lesser. Will you be able to keep an open mind, be fair and impartial in this regard?

A PROSPECTIVE JUROR: Yes.

THE COURT: Yes, sir.

A PROSPECTIVE JUROR: I have a close friend who is a judge.

THE COURT: Okay. Here in this county.

A PROSPECTIVE JUROR: Court of Appeals.

THE COURT: Tell him I'm doing a good job.

Will that relationship in any way affect you from being fair and impartial in this case?

A PROSPECTIVE JUROR: No.

THE COURT: Thank you. In the back row, anyone, family member or close friend or anything in law enforcement.

A PROSPECTIVE JUROR: Yes. My mom was a secretary for the clerk's office here in Mineola. She's retired now. And then I have a pretty big family. So, two of my uncles are retired New York City Police Officers. I have a cousin who is a Port Authority Police Officer. And I have another cousin who is in the academy for Suffolk County.

THE COURT: Great. You heard everything we have discussed with respect to there will be police officers in this case and also but notwithstanding the fact they're police officers, they get no greater or lesser credibility in your mind, and you will be able to uphold that standard?

A PROSPECTIVE JUROR: Yes.

THE COURT: Use your everyday life experiences and you decide is this guy telling me straight or is he not. You know.

A PROSPECTIVE JUROR: Yes.

THE COURT: I am sure they'll probe that some more with you.

Anyone else in the back row, law enforcement.

A PROSPECTIVE JUROR: I have a cousin that is a lawyer.

THE COURT: Okay. Does he do criminal.

A PROSPECTIVE JUROR: No, he in Florida, though.

THE COURT: Okay. Does criminal in Florida. Do you have the opportunity to discuss cases with your cousin?

A PROSPECTIVE JUROR: No.

THE COURT: Would that relationship in any way affect you from being fair and impartial here?

A PROSPECTIVE JUROR: No.

THE COURT: Then I will ask one more question. In the front row, anyone ever been a victim of a crime, accused of a crime, a witness to a crime, other than, of course, the officer. I know you have been involved in a lot of cases, right? But if you have something else to tell me, you tell me.

A PROSPECTIVE JUROR: Personally, you know, car was stolen, cars, you know, in Queens. My car was stolen out here. Car was broken into twice. I had a cousin that was collared. I have an uncle that was locked up.

THE COURT: You basically have a whole spectrum.

A PROSPECTIVE JUROR: The whole gambit.

THE COURT: Not involved in the criminal justice system but different people affected in different ways by it.

A PROSPECTIVE JUROR: Right.

THE COURT: Any of those experiences affect you from being fair and impartial in listening to the evidence in this case and judging everything based on what you hear and see in this case?

A PROSPECTIVE JUROR: Not at all.

THE COURT: Sir, right here, you have your hand raised.

A PROSPECTIVE JUROR: Home was burglarized, I had a car stolen.

THE COURT: Okay. And did the police get involved in nay of those things.

A PROSPECTIVE JUROR: Yes, they did.

THE COURT: Any experience either pro or con with the way it was investigated that would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR: No.

THE COURT: And, you understand those events have nothing to do with this case.

A PROSPECTIVE JUROR: Yes.

THE COURT: You will be able to judge this

case on what you see and hear in this courtroom?

A PROSPECTIVE JUROR: Yes.

THE COURT: Someone else have their hand raised? Yes, sir.

A PROSPECTIVE JUROR: Car was vandalized two years ago.

THE COURT: And, same question to you, did the police get involved in that situation?

A PROSPECTIVE JUROR: Actually, someone driving by found out who it was, and we found out and the police did get involved later on, but there was no investigation or anything.

THE COURT: But that experience, the event that occurred, and the police's involvement, did that leave any taste in your mind, either pro or con that would affect you for being fair and impartial in this case and judging the credibility of the witnesses as you see and hear them in this courtroom?

A PROSPECTIVE JUROR: No.

THE COURT: Okay. Yes, sir.

A PROSPECTIVE JUROR: Car stolen, break-ins, house.

THE COURT: Okay. You heard the questions I posed to your fellow potential jurors. Any of those events that have taken place in your mind would affect

you from being fair and impartial in this particular case?

A PROSPECTIVE JUROR: No.

THE COURT: How about in the back row, folks?

A PROSPECTIVE JUROR: Pocketbook stolen, car was stolen.

THE COURT: When did that happen, recently or --

A PROSPECTIVE JUROR: Last three years.

THE COURT: Anything about those events which occurred in your life that you think would affect you from being fair and impartial? What I mean, I mean, not only that the crime occurred, but also any experience you might have had with law enforcement personnel. Anything in those experiences that would affect you from being fair to both sides sitting here today?

A PROSPECTIVE JUROR: No.

THE COURT: No. Okay.

Someone else have their hand raised.

A PROSPECTIVE JUROR: I had a car stolen. Everything was taken care of, cops were involved. All was taken care of.

THE COURT: Because of that experience, you will give no greater or lesser credibility to police witnesses. You will listen to the testimony as it comes

out. You will judge it based on your everyday life experience.

A PROSPECTIVE JUROR: Yes.

THE COURT: Okay. Yes, sir.

A PROSPECTIVE JUROR: A long time ago I was assaulted by one person that was with a group of four or five individuals. Just wrong place, wrong time. Also I had a car stolen.

THE COURT: Do you think either the events themselves or perhaps any contact you had with police personnel because of those events would any of those affect you being fair and impartial to both the People and the defendant in this case?

A PROSPECTIVE JUROR: No. Only thing that was disconcerting about the car being stole, it was right around the block from a police station.

THE COURT: It happens.

A PROSPECTIVE JUROR: It wouldn't have an impact.

THE COURT: Great. I am sure the attorneys will probe that some more. I appreciate everybody being forth right. Again, if something gets jogged in your memory and you want to discuss it and you don't want to talk openly, come up here. Okay.

Mr. Hayden.

(Whereupon, Mr. Hayden questioned the prospective jurors, herein not recorded.)

(Whereupon, Mr. Lemke questioned the prospective jurors, herein not recorded.).

(Whereupon, the following takes place at side-bar.)

THE COURT: Number one has been let go on consent. And, with respect to number thirteen, Miss Williams, based on her different responses both to Mr. Hayden and Mr. Lemke, if the two of you would like, I would allow her to be removed on consent for cause.

MR. LEMKE: Yes.

THE COURT: Any objection to that?

MR. HAYDEN: No.

MR. LEMKE: No objection.

THE COURT: No objection. On consent for cause.

We an start the process.

THE CLERK: Consideration first five jurors up to and including Delaney. Challenges for cause, People.

MR. HAYDEN: No, none for cause.

MR. LEMKE: No.

THE CLERK: Peremptory challenges, People. You've used ten.

THE COURT: Two and five.

THE COURT: Mr. Lemke.

MR. LEMKE: Four and five.

THE COURT: Defendant has exercised peremptories on Mary Marino and Anthony Lomangino. That leaves Mr. Delaney as juror number eight.

Is that correct?

MR. LEMKE: Yes.

THE CLERK: Consideration of the last four empty seats, challenge for cause, People.

MR. HAYDEN: No, Your Honor.

THE CLERK: Defendant.

MR. LEMKE: None.

THE CLERK: Peremptory, People.

MR. HAYDEN: Eleven and fourteen.

THE CLERK: Peremptory, defendant.

MR. LEMKE: Nine.

THE COURT: We have one.

MR. LEMKE: Yes.

(Whereupon, the following takes place in open court.)

THE COURT: Folks, again, I want to thank you for your time, patience and consideration. I thank you not only on behalf of the court but also on behalf of the People and the defendant.

Again, if you'd listen to Mr. Paoli, one person was

chosen from this group to remain as a juror and the rest of you will just follow the officer's instructions and I hope you have a great day.

THE CLERK: The following juror whose name I am about to call has been selected. If you hear your name, stay in your seat. The other jurors are excused with the thanks of the court.

Mr. Christopher Delaney remain in your seat. Other jurors are excused.

Mr. Delaney, please stand, raise your right hand.

Do you swear or affirm that you will try this action in a just and impartial manner to the best of your ability and render a verdict according to the law and evidence so help you God, sir?

A PROSPECTIVE JUROR: Yes.

THE CLERK: Please have a seat.

THE COURT: Mr. Delaney, as I told the other sworn jurors yesterday, I am going to give you admonitions for you to follow. You're free for the day, to return tomorrow, Friday, at nine o'clock. I would suggest to you, as I did the others, you might want to come early. Sometimes parking is tough. There's Dunkin Donuts, Starbucks across the street.

You must not converse among yourselves or with

anyone else upon any subject connected with the trial. You must not read or listen to any accounts or discussions of the case in the event it is reported by newspapers or media. You must not visit or view the promises or place where the offense charged was allegedly committed or any other premises or place involved in the case.

Prior to your being discharged, you must not request, accept, agree to accept, or discuss with any person the receiving or accepting of any payment or benefit in consideration for supplying any information concerning the trial.

You must promptly report to the Court any incident within your knowledge involving an attempt by any person improperly to influence any member of the jury.

You are not to access the Internet or Worldwide Web any means available to you for the purposes of either learning about this case or the law or legal issues concerning this case.

As you heard me say, I'm not saying you can't go on the computer, just not to look up this case or any other law involving this case.

Okay. Thank you. Have a great day. See you tomorrow morning.

A PROSPECTIVE JUROR: Do I get anything? I

have to report to work. I wasn't sure if there was something I would get.

THE COURT: The sergeant will take care of that.

(Whereupon, there was a recess in the proceedings.)

THE CLERK: Case on trial, indictment 167N-2005, the People of the State of New York versus Mark Orlando.

Appearances for the People.

MR. HAYDEN: Robert T. Hayden, Your Honor. The People are ready.

THE CLERK: Representing Mr. Orlando.

MR. LEMKE: Dennis Lemke for Mr. Orlando. We're ready also.

THE CLERK: Let the record reflect the presence of Mr. Orlando and the prospective jurors.

THE COURT: Good afternoon, ladies and gentlemen. My name is Judge David Sullivan. I know it says LaPera on the door and name plate. I am just borrowing his courtroom to do the jury selection.

Also, I note it's 12:30. It's lunch time. I am going to go less than ten minutes, and then what will happen, we will break to about 2:15, 2:30, because I have some other matters I have to attend to. Okay.

Our intention here is to pick a fair and impartial

jury, and in no way, either the Court or the respective attorneys in front of me are trying to embarrass you or pry into your personal life or anything like that. And you will see as the process goes on, that if there's anything you want to discuss that is of a personal nature, you can come up to the bench, you let us know and we will talk to you privately.

Okay. So, I am just going to give some preliminary instructions. Mr. Paoli is going to swear you in and then I am going to give you some preliminary instructions for a few minutes and then we will resume this afternoon. Okay.

THE CLERK: Prospective jurors please rise and raise your right hand.

Do you and each of you solemnly swear to answer truthfully all questions asked of you relative to your qualifications to serve as trial juror in this action so help you God?

Please respond I do.

(Whereupon, the prospective jury panel collectively answered in the affirmative.)

THE CLERK: Have a seat, please.

THE COURT: Again, welcome everyone. Some of you here are about to be selected as jurors. I will explain briefly what the trial involves and the roles of

the judge and the jury. We will also determine which of you will actually sit as jurors in this case.

The trial which is about to commence is a criminal action entitled the People of the State of New York against Mark Orlando who is called the defendant. The indictment reads as follows, in sum and substance.

The Grand Jury of the County of Nassau by this indictment accuses the defendant Mark Orlando with the crime of Murder in the Second Degree in violation of Section 125.25(1) of the Penal Law of the State of New York committed as follows:

The defendant Mark Orlando, on or about the third day of December, 2004, in the County of Nassau, State of New York, individually and aiding and abetting, and being aided and abetted by Herva Jeannot, with intent to cause the death of Robert Calabrese, caused the death of Robert Calabrese.

A trial is the process which determines if the defendant is guilty or not guilty of the charge I just read. In that process those of you who are selected as jurors and I as judge perform separate functions. As jurors you are going to be called upon to determine whether or not the evidence which you hear and see in this case establishes the defendant's guilt beyond a reasonable doubt.

In order to do that, at the end of the trial, you will have to evaluate all the evidence and determine what evidence that you have heard from the witnesses and seen as exhibits is credible and what it all means. This is called finding the facts. That would be your function alone. I will find no facts in this trial. Your ultimate decision is called a verdict. Your verdict will be either guilty or not guilty.

The attorneys will present the evidence usually by calling witnesses and may suggest in their closing arguments that you draw certain conclusions from the evidence. You're not bound by what the attorneys say. Only you can decide what really happened and a verdict as to the count in the indictment. As judge I make no determination of guilt or lack of guilt. My role at trial is to ensure that you reach your verdict in accordance with the applicable law as I will explain it to you.

In order for the People and the defendant to receive a fair trial, I may have to rule on questions concerning the conduct of the trial. Those rulings have nothing do with whether the defendant is guilty or not guilty. I may also rule on questions concerning what evidence you may consider, and for what purpose.

When I make a ruling concerning whether you may

hear some testimony or see some exhibit which is offered as evidence, I will be ruling on whether or not you are permitted to hear or see it as a matter of law. Likewise, if I instruct you to disregard something you might have heard I will do so because that is the law. None of my rulings should be taken by you as any indication at all of whether you should believe all or part of what is offered as evidence, or that the defendant is guilty or not guilty. That is solely for you to determine.

You must accept the law as I give it to you if the defendant and the People are to have the fair trial to which they are entitled.

The People are represented by Denis Dillon, District Attorney of Nassau County. Assistant District Attorney Robert Hayden will be trying the case on his behalf.

MR. HAYDEN: Good afternoon, everyone.

THE COURT: The defendant is represented by his attorney, Mr. Dennis Lemke.

MR. LEMKE: Good afternoon.

THE COURT: The fact that this action is brought in the name of the People, or that evidence is presented by a public official, does not in any way indicate that the public wants a specific verdict. The

People of the State of New York are served by whatever verdict is justified by the evidence.

You have heard reference to the fact that the defendant was indicted by a Grand Jury. This too is not and must not be taken as any evidence of guilt. An indictment is simply a piece of paper by which a defendant is accused of a crime. Remember the defendant is presumed innocent. Only you as members of the trial jury will determine whether the defendant is guilty or not guilty.

Serving on a jury is a vital function for citizens under our system of law. It is also a very great responsibility. To accord the defendant and the People a fair trial you must as a juror be free from any preconceived notions, sympathies or prejudices that might prevent you from returning a fair and just verdict based solely on the evidence or lack of evidence.

Thus, the first order of business will be to talk to you as prospective jurors. I will ask you some questions and after I finish, the attorneys for both parties will ask some questions.

Again, as I stated, when you first entered the courtroom, the purpose of these questions is not to embarrass you or to discover any personal details about your lives. It is simply to determine who will

ultimately sit as jurors in this case.

A number of you will not be selected, but this is not a reflection on you either as a citizen or as a person. It is simply a decision reached during the selection process that you are not to sit on this particular case.

Mr. Paoli, at this point, I think we will -- want to fill the box or break for lunch?

Folks, being it's twenty to one I am going to break for lunch. I appreciate the fact you're all here doing your civic duty. One thing I can assure all of you is that you will be treated with utmost respect by this Court.

I am going to break and resume here at approximately 2:20. You will listen to the officers and Mr. Paoli, my clerk.

I hope you have a good lunch.

L U N C H E O N   R E C E S S

(Afternoon session.)

THE CLERK: Continued case on trial, indictment 167N-2005, People versus March Orlando.

People ready.

MR. HAYDEN: Ready, Your Honor.

THE CLERK: Defense ready?

MR. LEMKE: Defendant ready, Your Honor.

THE CLERK: Let the record reflect the presence of Mr. Orlando and the prospective jurors.

THE COURT: Good afternoon, ladies and gentlemen. I apologize for the delay.

What we're going to do, I am going to tell you briefly the length of the trial, I am going to have -- Mr. Paoli is going to randomly pick fourteen names out and when he does you will walk up to the sergeant here and the officer with your forms, and then you will go into the seats here.

I don't want you to be intimidated or afraid to go into the seats. That doesn't necessarily mean you will be chosen for this jury. All it means is we will be talking directly to the fourteen people that are sitting there, but we would ask, of course, everyone to listen because you may end up sitting there as well. And it will be the same questions posed to you.

I am going to tell you a couple of brief things right now to try to expedite it so if there's a problem off the bat before you get into the seat I will let you go. Because as I said I am not trying to in any way force or compel you to sit here and inconvenience you. The only thing I can tell you, however, is being released from this courtroom just sends you back to the commissioner of jurors.

Okay. I don't know how long you have been here. I don't know when the period ends, when you can be relieved of the jury duty here. When I give you this preliminary information you will know, you will know what the case is about already. You will know the charge. The case will take approximately two weeks. We're saying two weeks from this Monday. And I think that is an outer limit. I believe we're going to move quickly, definitely get to deliberations prior to that time. Just so you know, if you're chosen to sit on this jury, we intend to start the trial and the testimonial phase of the trial tomorrow. We will not sit on Monday. So, you have had Monday off.

The reason I am telling you these things up front, if you have family or a business situation that prohibits you from sitting for these two weeks, if you are called in this random fourteen names, that will be called in a moment, as you get up here to the sergeant, just put your hand up and I will talk to you right here instead of having you sit, and then going through having to get up and fill the seat again.

Bear in mind it's something that, service is something that is obviously pivotal to our system. I ask you don't make up excuses not to sit if you don't have a family, personal or business situation, and you

are able to sit, I ask that you fulfill your obligation to the system and to our country. That is all that would mean.

I will ask you some general questions. I reiterate if it's something personal you want to tell us, just let us know and you will come up here because we're not trying to embarrass you. And then after I ask you some general questions, each of the attorneys are going to talk to you and ask you some questions. That is what it means to get up to these seats. I am trying to eliminate the fear of the unknown if any of you have never been through this process before.

Of course, if you get called by Mr. Paoli for a minute, if you have a medical situation, or you have a hearing impairment or something, you know, that will affect your ability to sit on this case and be fair and impartial, you let us know when you get up here. Okay. Thank you.

THE CLERK: Ladies and gentlemen, I am going to draw fourteen names randomly from the drum here. If you hear your name called, use the swinging gate over here on my left, probably your right, use this swinging gate to approach the podium. Bring your items with you, coat, pocketbook, jacket, anything like that, bring your personal possessions with you. Okay. Have all your

questionnaire broken down into the four parts, please, so we don't have to separate them.

Prospective juror Michael Camastro, C-A-M-A-S-T-R-O.

THE COURT: Pick the names from the last row first.

THE CLERK: Jennifer Eishstadt E-I-S-H-S-T-A-D-T.

Lauren Jacob, J-A-C-O-B, seat number three.

Seat number four Lana Marascro, M-A-R-A-S-C-R-O.

Number five --

THE COURT: Bear in mind if there's a problem with the two weeks or family or business situation, let me know here because I am going to assume once you sit there I can go further into my questioning.

Am I clear?

(Whereupon, the following takes place at a side-bar.)

THE CLERK: This is Miss Marascro.

THE COURT: Good afternoon.

A PROSPECTIVE JUROR: I have a husband who is in a federal prison.

THE COURT: We don't want to upset you.

MR. HAYDEN: Consent.

MR. LEMKE: Consent.

A PROSPECTIVE JUROR: Husband's very sick.

See you getting emotional already. You feel you can't sit on this case.

A PROSPECTIVE JUROR: Right.

MR. HAYDEN: Consent.

MR. LEMKE: Consent.

THE COURT: We don't want to upset you. Just follow the officer's instructions.

THE COURT: You guys all right at this point?

(Whereupon, the following takes place in open court.)

THE CLERK: Seat number three, David Byrnes, B-Y-R-N-E-S.

THE COURT: Something private?

A PROSPECTIVE JUROR: Like to approach

(Whereupon, the following takes place at side-bar.)

A PROSPECTIVE JUROR: I am a private physician, gastroenterologist.

THE COURT: Sitting on this case would affect your ability to be fair and impartial?

Any objection?

MR. HAYDEN: No.

MR. LEMKE: No.

(Whereupon, the following takes place in open court.)

THE CLERK: James Braja, B-R-A-J-A.

THE COURT: If you do have a problem with two weeks, it's not something of a personal nature, you can tell us from the podium. Okay. Otherwise, I am having the attorneys stand up here so we don't have to keep getting up.

You have a problem?

A PROSPECTIVE JUROR: Sort of personal.

(Whereupon, the following takes place at side-bar.)

A PROSPECTIVE JUROR: Mention it's starting next week, runs two weeks.

THE COURT: Yes. Start tomorrow. Wouldn't sit Monday. Then it would go for two weeks, and you're sitting here doesn't mean you're --

A PROSPECTIVE JUROR: I understand. Next week I have two children to take care of. My wife is going on a business trip the second week of the thirteenth, fourteenth, fifteenth. I am the sole provider of my two kids for those three days.

THE COURT: Thirteenth, fourteenth and fifteenth.

MR. LEMKE: Consent.

MR. HAYDEN: Consent.

THE COURT: Folks, I know this is your first experience, we're here all the time so it becomes second

nature. When I am talking something personal, embarrassing, you know, it's something intimate, you know. If you cant stay next week due to a child care situation, something like that, you can tell us that from the podium. Speed things up.

Again, bear in mind, I am not the type of judge who tries to compel you to sit here and go through this process. I try to cooperate with you. When you leave here I don't know where you're going to end up. Bear that in mind. And if things aren't significant in the next two weeks, see if you can sit through the process, and that means I will ask you some questions, the attorneys will ask you some questions. Doesn't mean you will e on this case. Appreciate it.

THE CLERK: Thomas Donovan, D-O-N-O-V-A-N.

Carl Lieberman, L-I-E-B-E-R-M-A-N.

A PROSPECTIVE JUROR: Two things. My father was murdered.

THE COURT: That is enough I think. Sorry to hear that.

On consent?

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

THE CLERK: Robin Charlow, C-H-A-R-L-O-W.

Jeffrey Tuck, T-U-C-K.

Shelly Bustric, B-U-S-T-R-I-C.

THE COURT: Public, private?

A PROSPECTIVE JUROR: Single mother of two children. I can't stay two weeks.

THE COURT: Consent?

MR. HAYDEN: Consent.

MR. LEMKE: Consent.

THE CLERK: Dominic Vissichelli, V-I-S-S-I-C-H-E-L-L-I.

Robert Herrera, H-E-R-R-E-R-A.

David Evans, E-V-A-N-S.

A PROSPECTIVE JUROR: Like to speak to the judge.

I have a working situation. I am a school teacher. Ten days left end of school and finals.

THE COURT: My wife's a teacher. Consent?

MR. HAYDEN: Consent.

MR. LEMKE: Consent.

THE CLERK: Joan Catanese, C-A-T-A-N-E-S-E.

A PROSPECTIVE JUROR: This is my second day. I woke up with bloodshot eyes. Called the doctor during lunch. I should get it looked at.

THE COURT: Consent.

MR. HAYDEN: Yes.

THE CLERK: Thomas Donegan, D-O-N-E-G-A-N,

number eight.

Diane Haley, H-A-L-E-Y.

David Moore, Jr. M-O-O-R-E, seat number ten. Christopher Lake, L-A-K-E.

THE COURT: Yes, sir.

A PROSPECTIVE JUROR: I am the sole proprietor of a service business. It would be hardship to be away two weeks.

THE COURT: Consent.

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

THE CLERK: Melissa Bates, B-A-T-E-S, seat number eleven.

A PROSPECTIVE JUROR: I can't afford to take two weeks off from work. I can't afford it. Supporting myself.

MR. HAYDEN: Consent.

MR. LEMKE: Consent.

THE COURT: Excused. Take care.

THE CLERK: Thomas Cannon, C-A-N-N-O-N.

A PROSPECTIVE JUROR: I have court tomorrow.

THE COURT: Okay: Consent, gentlemen?

MR. LEMKE: Yes.

MR. LEMKE: Yes.

THE COURT: Good luck.

THE CLERK: Steven Kolasinski, K-O-L-A-S-I-N-S-K-I.

A PROSPECTIVE JUROR: I have two job interviews set up next week.

THE COURT: Sure. No problem.

MR. HAYDEN: Consent.

MR. LEMKE: Consent.

THE CLERK: John Schoenberg, S-C-H-O-E-N-B-E-R-G.

A PROSPECTIVE JUROR: I am a teacher and next week is the last week.

THE COURT: We run into that problem a lot. On consent. Good luck.

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

THE CLERK: . Howard Kaufman, K-A-U-F-M-A-N.

A PROSPECTIVE JUROR: I have a concern with the possible two week term of the trial. Never spent more than a week outside of my office at one time. Only one staff person working with me. Only been with me a month. I'd like to be excuse.

THE COURT: Gentlemen.

MR. HAYDEN: Consent.

MR. LEMKE: Consent.

THE CLERK: Christian Merjuia, M-E-R-J-U-I-A.

Maria Muniz, M-U-N-I-Z.

THE COURT OFFICER: Personal nature. This juror would like to step up.

(Whereupon, the following takes place at side-bar.)

THE COURT: Hello.

A PROSPECTIVE JUROR: Before I try but I have problem with language.

THE COURT: I see that. No problem. Because of the language difficulty you might not hear everything. It would be important as a juror to hear.

On consent?

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

A PROSPECTIVE JUROR: Thank you.

(Whereupon, the following takes place in open court.)

THE CLERK: Rocco Napol.

THE CLERK: I got like a work conference but I can get somebody to sub for me.

THE COURT: Want to go through the questions and if it starts bothering you, just tell us.

THE CLERK: Christopher Schaff, S-C-H-A-F-F.

A PROSPECTIVE JUROR: I work for a small publishing company in Merrick. I do all the invoicing,

shipping, receiving. I would, I think it would be a hardship for the company.

THE COURT: Consent?

MR. HAYDEN: Yes, Your Honor.

MR. LEMKE: Consent.

THE CLERK: Kristin Lopoff, L-O-P-O-F-F.

A PROSPECTIVE JUROR: I need to be at work. I am sorry.

THE COURT: That is no problem. You can leave. You have to go back to the commissioner.

THE CLERK: Katelyn Leo, L-E-O, seat number thirteen.

A PROSPECTIVE JUROR: I have two jobs. Going to be pretty much impossible for me to find coverage.

THE COURT: Okay. Be a problem for you to sit fair and impartially because of that.

A PROSPECTIVE JUROR: I would not be able to find anyone to work.

THE COURT: Gentlemen.

MR. HAYDEN: Consent.

MR. LEMKE: Consent.

THE CLERK: Carol Schulman, S-C-H-U-L-M-A-N.

A PROSPECTIVE JUROR: I am teacher, same.

THE COURT: Same problem.

A PROSPECTIVE JUROR: Last week of June.

THE COURT: Any objection?

MR. HAYDEN: No.

MR. LEMKE: No.

THE CLERK: Egilla Phelps, P-H-E-L-P-S. Matthew Morissi, M-O-R-I-S-S-I. Seat number fourteen.

Quinlyn Clemenz, C-L-E-M-E-N-Z.

A PROSPECTIVE JUROR: Retire because I have a memory loss. Problem concentrating.

THE COURT: Let you go.

Yes.

THE CLERK: Brendan Moynihan, M-O-Y-N-I-H-A-N.

A PROSPECTIVE JUROR: I am a CPA and I'm in the middle of an audit. Two weeks would be a hardship.

THE COURT: Consent?

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

THE COURT: Ladies and gentlemen in the audience as I indicated we're going to now direct our questions to the ladies and gentlemen in the jury box. However, I just ask you to pay attention. I know it's difficult. It's late in the day. But you may be sitting here. It will be same type of questions. So, you may not know if that opportunity comes right off the bat from something you heard, that this case is not

right for you, we can cut to it and discharge you from this case. Okay.

The jury will not be sequestered during its deliberations. You will be permitted to return home in the evening. I will instruct you on the rules you will follow at that time.

Has anyone in the last four years serve on any jury duty, either on the state or federal level, in the last four years? No.

My first series of questions will concern your background in order to determine if there's anything which might prevent you from deciding this case solely on the evidence presented. I will start by asking them of all of you. Your answers will not necessarily qualify or disqualify you. But an affirmative answer of yes, or even a maybe, will probably mean that either I or the attorneys will ask you more questions individually with respect to that issue.

If you wish to answer yes or maybe, please raise your hand as soon as I complete the question. If you do not understand the question, just let me know. If you do not raise your hand, I will assume your answer is no to that question.

The defendant, defendant's attorney, and the Assistant District Attorney have already been introduced

to you. Do any of you know either the defendant, his lawyer or the Assistant District Attorney?

The following witnesses may be called in this case. They don't have to be, but there's a potential they will be. I am going to read the list. There's many names here. Then I will ask you if you recognize any of the names. Okay.

Robert Calabrese, Sr.,, Long Beach.

Robert Ianfolla, also Long Beach.

Tommy Flores from Long Beach.

Barbara Diamant from Long Beach.

Detective David Nystrom.

Police Officer Peter Vozzo.

Ambulance Medical Technician Dan Brooks.

Dr. Brian O'Reilly.

Dr. Michael DeMartino.

Frank Walker from Nassau County.

Brian Atkinson, Nassau County.

Kathleen Cardineau, Island Park.

Charles Costello.

Police Officer Steve Loschiavo.

Detective Jim McGinn.

Detective Bill Brosnan.

Detective Jim Cereghino.

Detective John McHugh.

Sergeant Greg Magnifico.

Police Officer Norman McCloy.

Detective Ken Strigaro.

Detective Scott Kovar.

Detective Michael Nigro.

Detective Michael Kuhn.

Detective Bob Shaw.

Detective Jim DiBeneditto.

Ken Carter.

Vincent Buscemi, Long Beach Police Department.

There may be a representative of Cingular Wireless. I only tell you that in case someone works for that company or knows people that do.

Does anybody recognize or believe they know any of the potential witnesses that may testify at this trial?

I will start with the front row.

Do any of you have any family member or close friend in law enforcement, a police officer, a federal agent, a prosecutor? If so you can raise your hand.

In the second row?

Yes, sir.

A PROSPECTIVE JUROR: My father and uncle are retired New York City Police Officers. My cousin is a sergeant.

THE COURT: And, sir, as you can tell, there

will be police officers testifying in this case. I will instruct you on the law that every witness that takes the stand, you are to judge their credibility the same. Because someone is a police officer, they get no greater or lesser credibility.

You use your everyday life experiences, and you make a judgment, whether or not you believe the testimony of each and every witness irrespective of their walk of life is something you believe to be credible.

Would you be able to do that if you're chosen as a juror in this case?

A PROSPECTIVE JUROR: Yes. Sure.

THE COURT: Okay. Sir.

A PROSPECTIVE JUROR: My cousin is a New York City Police Officer.

THE COURT: Okay. You heard what I just said to this gentleman.

A PROSPECTIVE JUROR: Yes.

THE COURT: Would you have a problem being able to judge the testimony of police officers the same as any other witness.

A PROSPECTIVE JUROR: No.

THE COURT: In the back row, someone else have their hand raised.

Yes, sir.

A PROSPECTIVE JUROR: Yeah, my father and uncle are retired police officers from the city.

THE COURT: Father and uncle?

A PROSPECTIVE JUROR: Yeah.

THE COURT: And, would that relationship affect you?

A PROSPECTIVE JUROR: No.

THE COURT: You will be able to follow the law as I instruct you in regard to that?

A PROSPECTIVE JUROR: Yes.

THE COURT: Okay. Sir, at the end, is that seat fourteen at the end? Seat fourteen. I am sorry, that would be number eight.

A PROSPECTIVE JUROR: Close friends, NYPD.

THE COURT: Now, you may have occasion to discuss cases with these people, sir. Can you assure us that, A, you would judge every witness's credibility the same? In other words, a police officer gets no greater or no lesser credibility because they're a police officer?

You have a problem with that?

A PROSPECTIVE JUROR: No.

THE COURT: Okay. And you understand that they won't be testifying at this case and you will only

judge whatever evidence you hear and see in this case and be fair and impartial?

A PROSPECTIVE JUROR: Yes.

THE COURT: Anyone else with law enforcement?

Have any of you, again, I will start with the front row. Any of you or anyone in your family ever been the victim of a crime, witnessed a crime, or in any way participated in a criminal proceeding?

I will start with you, sir.

A PROSPECTIVE JUROR: My mom was robbed, armed robbery.

THE COURT: Sorry to hear that.

THE COURT: Would that experience affect you from being fair and impartial to both the People and the defendant in this case?

A PROSPECTIVE JUROR: No problem.

THE COURT: No problem. Okay. You dealt with the police in that case?

Were the police involved? Do you have any feelings?

A PROSPECTIVE JUROR: I didn't have any.

THE COURT: Okay.

A PROSPECTIVE JUROR: Not at all.

THE COURT: You can be fair and impartial?

A PROSPECTIVE JUROR: Yes.

THE COURT: Ma'am.

A PROSPECTIVE JUROR: I have been a crime victim.

THE COURT: Is it something you can discuss?

A PROSPECTIVE JUROR: Rather --

THE COURT: Come up privately.

(Whereupon, the following takes place at side-bar.)

THE COURT: Your name, please.

A PROSPECTIVE JUROR: Robin Charlow. I was sexually assaulted.

THE COURT: Sorry to hear that. Is that, do you think that experience would affect you from being fair and impartial not just the People, but the defendant as well?

Was anyone apprehended?

A PROSPECTIVE JUROR: No, it was many years ago.

THE COURT: Want to ask questions up here.

MR. HAYDEN: You dealt with police officers?

A PROSPECTIVE JUROR: Yes.

MR. HAYDEN: How do you feel you were treated?

A PROSPECTIVE JUROR: Fine.

MR. LEMKE: I have nothing.

A PROSPECTIVE JUROR: But I have something

else. I teach Hofstra Law School. I teach criminal law. I don't know if that is relevant or not. Never been called to a criminal jury. So --

THE COURT: Well, obviously, I am going to charge you on the law. Even if you think I'm giving the wrong law, you will be bound to follow the law as I give it to you.

Do you think, because of that experience, your profession, you'd have a problem with that?

A PROSPECTIVE JUROR: I don't have a problem. I don't know if you had a problem with me.

THE COURT: I will leave it up to the attorneys to question you about that.

Do you want to question in regards to that?

MR. LEMKE: You teach probable cause, search seizures, arrests.

A PROSPECTIVE JUROR: I don't do criminal procedure or substantive criminal law, but I was, I was a federal defender. I'm not a trial attorney. Long time ago.

MR. LEMKE: Part of the curriculum elements of different crimes, aiding and abetting, felony murder.

A PROSPECTIVE JUROR: Yes.

THE COURT: Consent?

MR. HAYDEN: Sure.

MR. LEMKE: Yes. I think so.

THE COURT: We're going to let you go.

A PROSPECTIVE JUROR: I figured.

(Whereupon, the following takes place in open court.)

THE CLERK: The following prospective jurors please step up.

Hertha Perez, seat number four.

THE COURT: Good afternoon.

Ma'am, before I continue, anything that you heard so far that would be a problem for you to sit on this case.

A PROSPECTIVE JUROR: Well, maybe the last thing you brought up with everything about victims.

THE COURT: You have a problem with that.

A PROSPECTIVE JUROR: I might. Bunch of things, my family, friends, relatives, my mother.

THE COURT: Something you want to talk about or do you want to talk privately about it.

A PROSPECTIVE JUROR: Well, it came up once before in an interrogation because, I mean, it was a famous case, you know.

THE COURT: Step up. Why don't you step up

(Whereupon, the following takes place at side-bar.)

A PROSPECTIVE JUROR: I will start with

probably with the Golub case.

THE COURT: Your family?

A PROSPECTIVE JUROR: I know them. I knew the paper boy.

THE COURT: This case may not be right for you.

A PROSPECTIVE JUROR: And my mother was threatened with a claw hammer.

THE COURT: Any questions?

MR. HAYDEN: No.

A PROSPECTIVE JUROR: Sister was hit in the head with a gun.

THE COURT: Oh my God. We will let you go.

MR. LEMKE: Consent.

MR. HAYDEN: Consent.

(Whereupon, the following takes place in open court.)

THE CLERK: Peter Cascino, C-A-S-C-I-N-O.

THE COURT: Anything you heard so far, sir, that would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR: Repeat that question. Which question were you asking?

THE COURT: Well, first of all, the time. Is the time a problem?

A PROSPECTIVE JUROR: No.

THE COURT: We talked about if you knew, do you know anyone in law enforcement?

A PROSPECTIVE JUROR: Best friend, family, all police officers.

THE COURT: There will be a lot of police officers testifying here throughout the course of the trial. If you're chosen, would you be able to judge each one of them individually and not give them any greater or lesser credibility because they're police officers? Or you think you'd have a problem?

A PROSPECTIVE JUROR: Honest with you.

THE COURT: Sure.

A PROSPECTIVE JUROR: My friends are all police officers and detectives and all honest workers and I believe anything they say. We discuss work all the time. So --

THE COURT: I am going to let you go. Appreciate your honesty.

On consent?

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

A PROSPECTIVE JUROR: Thanks a lot.

THE CLERK: Jay Leslie.

THE COURT: Time is a problem?

A PROSPECTIVE JUROR: Yes. I am a sole proprietor of a business.

THE COURT: You feel you can't be fair and impartial? You'd be worried about the business?

A PROSPECTIVE JUROR: Yes.

THE COURT: Consent?

MR. HAYDEN: Yes.

MR. LEMKE: Yes.

THE CLERK: Paul Tebesco, T-E-B-E-S-C-O.

THE COURT: You have a problem with the time?

A PROSPECTIVE JUROR: Yes. I'm a manager of small business. For me to miss two weeks would be a hardship.

THE COURT: Consent?

MR. HAYDEN: Yes.

MR. LEMKE: Consent.

THE COURT: Sitting here, if you get through my questioning, it would just enable the attorneys to question you. It doesn't mean you will be sitting on this case.

THE CLERK: Roger Savell, S-A-V-E-L-L.

A PROSPECTIVE JUROR: I am self-employed. I have individual requirements over the next two weeks. Two weeks are very difficult for me.

THE COURT: You can't sit for two weeks?

A PROSPECTIVE JUROR: No way I can sit for two weeks.

MR. LEMKE: Consent.

MR. HAYDEN: Consent.

THE CLERK: Yolando Lorenzotti, L-O-R-E-N-Z-O-T-T-I.

THE COURT: Hello, ma'am.

A PROSPECTIVE JUROR: Hello.

THE COURT: You heard what we have been discussing so far. Any problems at this point?

A PROSPECTIVE JUROR: No.

THE COURT: Did anyone else in the front row ever been the victim or family member was a victim of a crime or participated in a criminal proceeding?

Anyone in the back row?

Yes, sir.

A PROSPECTIVE JUROR: Father testified at a lot of court proceedings. Wouldn't have a problem with that.

THE COURT: Anyone else in the back?

Yes, ma'am.

A PROSPECTIVE JUROR: I was a victim of a violent crime.

THE COURT: Do you want to talk about it from here or do you want to come up here privately?

A PROSPECTIVE JUROR: I guess privately would be better.

THE COURT: Sure.

(Whereupon, the following takes place at side-bar.)

A PROSPECTIVE JUROR: I was raped. I am just concerned about, if the nature of this trial would be graphically violent at all. I am a little concerned about that.

THE COURT: Yes. More than likely it would be graphic photographs.

A PROSPECTIVE JUROR: I don't know. I just don't know if I can handle that.

THE COURT: Sure. Yes, gentlemen, any questions?

MR. LEMKE: Consent.

MR. HAYDEN: Consent.

THE CLERK: Karen Calderone, C-A-L-D-E-R-O-N-E.

A PROSPECTIVE JUROR: Time's a problem. I am a self-employed interior decorator. I have contractors, electricians, painters all set up for the next two weeks.

MR. LEMKE: Consent.

MR. HAYDEN: Consent.

THE COURT: Again, I reiterate, that doesn't

mean she will not be back tomorrow and sent somewhere else.

Corey Kaliszczjk, K-A-L-I-S-Z-C-Z-J-K, seat number nine.

THE COURT: Good afternoon.

Anything you heard thus far you have a problem with?

A PROSPECTIVE JUROR: No, sir.

THE COURT: Anybody else have their hand raised in the back? Okay.

In the front row, any of you ever, not just within the last four years, any time, ever serve on a jury in a criminal or civil case, or on a Grand Jury?

Front row. Yes, ma'am.

A PROSPECTIVE JUROR: I served on a criminal case.

THE COURT: Okay. And, do you understand this is a criminal case, but you have to put that last one out of your mind and apply the law as I give it to you. Will you have any problem doing that.

A PROSPECTIVE JUROR: No problem.

THE COURT: Anyone else in the front row?

A PROSPECTIVE JUROR: I also sat on a case. No problem.

THE COURT: Okay. Sir.

A PROSPECTIVE JUROR: Same thing.

THE COURT: No problem listening to the rules. In the back anyone?

Yes, sir.

A PROSPECTIVE JUROR: Civil case.

THE COURT: Understand it's a different burden over there, different rules. You will be able to follow the instructions in this case?

A PROSPECTIVE JUROR: Yes.

THE COURT: Anyone else?

As jurors, your verdict must be unanimous. Twelve jurors seldom agree immediately. You will, therefore, be called upon to deliberate. Can each of you promise the parties that at the time deliberations commence, you will participate in the deliberation process.

In other words, can you promise the defendant and the People that you're willing to participate in the deliberations, express your own individual views based on the evidence in the case, keep an open mind, and listen to the views of the other jurors?

Anybody have a problem with that?

Second series of questions concerns your willingness to follow my instructions on the law. In order to be a juror, you do not have to know anything about the law. It is my function to explain the law to

you as it applies in this case. It is your function to determine the facts and to apply the law as I will explain those facts, if you are selected as jurors, I will explain the law in detail to you at the end of the case.

However, it is important at this stage for the parties to know that you will follow the law as I give it to you. I will then describe a few basic principles to make sure that you can follow them.

Every person accused of a crime is presumed innocent. That is, he stands innocent in the eyes of the law. The People must rebut this presumption, if they can, by the presentation of evidence which convinces you, beyond a reasonable doubt, of the defendant's guilt.

In a criminal case, the burden of proof is on the People and remains on the People throughout the trial. The defendant is not required to prove or disprove anything.

Are there any of you who cannot in your own mind accord the defendant this presumption of innocence?

At the close of the case, I will explain exactly what reasonable doubt means and that you must acquit the defendant if you have a reasonable doubt as to his guilt.

Are there any of you who cannot require that guilt be proven beyond a reasonable doubt before you would convict?

However, reasonable doubt does not mean beyond all doubt. In other words, the People are not obligated to prove guilt beyond all doubt. Nothing in life is absolutely certain.

Is there any of you who would require absolute certainty of guilt before you would convict?

Can you assure me that if you find guilt beyond a reasonable doubt you will return a verdict of guilty?

Under our system of law, the defendant is not obligated to testify, or call any witnesses, or explain his actions in any way. Indeed the defendant does not have to present any evidence at all, and you cannot draw any inference unfavorable to the defendant from this fact.

Are there any of you who will or might allow the fact that the defendant does not testify or call any witnesses influence your deliberations?

Your deliberations will end when you determine whether or not the defendant has been proven guilty beyond a reasonable doubt. Any sentence which may be imposed is a job for the Court exclusively. The jury will have no role to play. You're not permitted to

consider the possibility of punishment in your deliberations, and you may not include any recommendations as to sentence in your verdict.

Is there anyone who feels they cannot render a verdict free from sympathy and without considering the possibility of punishment?

It is not essential that you agree with or like the principles of law I will set forth for you. Under my oath as a judge, I must instruct you on the law as it applies to this case. Under your oath as jurors, you must accept the law as I explain it to you, whether you agree with it or not, and apply it to the facts as you find them.

Is there anyone who cannot accept this principle?

We already discussed the police witnesses. You must judge each witness as an individual and determine whether and to what extent you believe his or her testimony.

Some of the People's witnesses will be police officers. They'll take the same oath as all the other witnesses. The fact that a witness is a police officer, or wears a police officer's uniform, does not make him or her any more or less believable.

Do any of you have any feelings about the police, or has anyone had any experiences which would lead you

to give a policeman or policewoman's testimony any greater or lesser weight than anyone else's testimony?

Discussed that already. At this point still everybody understands that and has no problem with it.

You will now e asked various questions by the attorneys starting with the Assistant District Attorney, Mr. Hayden. Then the defendant's attorney Mr. Lemke will question you. Their questions like mine are only designed to determine whether you will sit on this case. If they inadvertently ask a question which is embarrassing or very personal, you may say so. If the question is not proper, I will tell you that you do not have to answer it. If the answer involves some personal information, again, I will permit you to answer that in private up here like we have been doing. Okay.

Mr. Hayden.

(Whereupon, Mr. Hayden questioned the prospective jurors, herein not recorded.)

(Whereupon, Mr. Lemke questioned the prospective jurors, herein not recorded.)

THE CLERK: Consideration of the first four jurors on the board for the four open seats. People for cause.

THE COURT: For cause, the first four.

MR. LEMKE: Consent.

MR. HAYDEN: Four.

THE COURT: Number four, Lorenzotti.

THE COURT: On consent. She had a problem with the graphic photographs.

THE COURT: Anybody else?

MR. HAYDEN: No.

MR. LEMKE: No.

THE CLERK: Peremptory, People. People have used fourteen.

MR. HAYDEN: No.

THE CLERK: Defense.

MR. LEMKE: Number one, Mr. Lamastro. Number three, Mr. Donovan.

THE CLERK: Two becomes nine.

Next three up for the last three seats. Cause People.

MR. HAYDEN: Got something wrong. I thought this was Herrera.

THE COURT: Your number seven is wrong. Supposed to be Robert Herrera.

MR. LEMKE: That is what I have.

THE CLERK: I have Herera as a discharge.

THE COURT: It was probably the person you got there.

THE CLERK: Do you have David Evans on?

THE COURT: No. I think that is a mistake. Evans is gone, Herrera is seven.

Do you have any objection?

MR. LEMKE: No.

MR. HAYDEN: No. Robert Herrera.

THE COURT: Do you have cause for those people.

MR. HAYDEN: I have none.

MR. LEMKE: None.

THE CLERK: Peremptory People.

MR. HAYDEN: Number six, Vissichelli.

THE COURT: Cause, defense.

Peremptory, I am sorry.

THE CLERK: Peremptory those last two.

MR. LEMKE: Tuck.

THE CLERK: Herrera becomes ten.

THE CLERK: Two seats left, nine and ten -- eight and nine rather.

People for cause?

MR. HAYDEN: No.

THE CLERK: Defendant.

MR. LEMKE: No.

THE CLERK: Peremptory, People, those two.

MR. HAYDEN: Nine, Kaliszczjk.

MR. LEMKE: Eight, Donegan.

MR. HAYDEN: What is the count?

THE CLERK: You used sixteen and Mr. Lemke used seventeen.

THE CLERK: Next two for the last two seats, cause.

THE COURT: Number ten, consent?

MR. HAYDEN: Consent.

THE CLERK: David Moore.

THE CLERK: Cause on that last one?

MR. HAYDEN: No.

THE CLERK: Cause, Mr. Lemke, seat number eleven Christian Menjuia.

MR. LEMKE: No.

THE CLERK: Peremptory challenge, People.

MR. HAYDEN: He is out.

THE CLERK: He is out, Menjuia.

THE CLERK: Next two, People cause.

MR. HAYDEN: No.

THE CLERK: Defendant.

MR. LEMKE: Rely on your discretion. I think pretty much she rehabilitated herself with pictures, I think.

MR. HAYDEN: Would you mind if I addressed something for cause? I just like to put something on the record.

THE COURT: I would like to ask, do you have any objection to this?

MR. LEMKE: No.

MR. HAYDEN: This fellow said something about, I don't know what he was talking about, but something about --

THE COURT: Mr. Napol for cause?

MR. HAYDEN: Yes.

THE COURT: Any objection, number twelve for cause?

MR. LEMKE: I will consent.

THE COURT: Consent on that.

MR. LEMKE: Yes.

THE COURT: You had no cause on thirteen.

MR. LEMKE: For cause.

THE COURT: You're concerned about the photographs?

MR. LEMKE: Yes, because she indicated --

MR. HAYDEN: Yes.

THE COURT: Consent.

THE CLERK: One left. People for cause.

MR. HAYDEN: No.

THE CLERK: Cause.

MR. LEMKE: No.

THE CLERK: Peremptory.

MR. HAYDEN: No.

THE CLERK: Peremptory.

MR. LEMKE: Yes, Moynihan.

(Whereupon, the following takes place in open court.)

THE COURT: Ladies and gentlemen, thank you for your patience. Mr. Paoli in a moment will give you some instructions. Out of the fourteen of you here in the box, two were chosen to sit on this case. And, with respect to everyone else, thank you very much for your time and your patience, and I hope you have a good night.

Mr. Paoli.

THE CLERK: The following names I'm about to call, you have been selected to sit on this jury. Please remain seated. If your name is called, remain seated. The other jurors, as the Judge said, you're excused with the thanks of the Court. See the court officers at the back door.

Jennifer Eishstadt and Robert Herrera, remain seated. You have been chosen for this case and will be sworn momentarily. The other jurors, you're excused.

The remaining two jurors, stand and raise your right hand.

Do each of you solemnly swear you will try this

action in a just and impartial manner, to the best of your judgment, render a verdict according to the law and evidence so help you God.

(Whereupon, the newly selected jurors collectively answered in the affirmative.)

THE COURT: I am going to give both of you some admonishments that you will have to follow. You will hear this throughout the course of the trial whenever we break and I am going to ask you to return tomorrow at two. So, come a little bit before two so you can get a parking spot. You can grab a coffee across the street, whatever. Okay.

I had told the other jurors to come in. Now we're endeavoring to call them to come at two. We hope in the morning tomorrow we will finish getting the jury and we can start right around two o'clock. Okay.

You must not converse among yourselves or with anyone else upon any subject connected with the trial. You must not read or listen to any accounts or discussions of the case in the event that it is reported by the newspapers or other media. You must not view or visit the premises or place where the offense charged was allegedly committed, or any other premises or place involved in the case.

Prior to your being discharged, you must not

request, accept, agree to accept or discuss with any person the receiving or accepting of any payment or benefit in consideration for supplying any information concerning the trial.

You must promptly report to the Court any incident within your knowledge involving an attempt by any person to improperly influence any member of the jury.

You shall not access the Internet or Worldwide Web by any means available to you for the purposes of either learning about this case or to learn about the law and legal issues concerning this case. Obviously you can turn on your computer but don't be looking at trying to find out about the law that pertains to this case or anything about this case.

Okay. Have a good night. Need you to follow the sergeant. See you tomorrow at two o'clock.

(Whereupon, the trial was adjourned to June 3, 2005.)