To be argued by:
Kerry Bassett, Esq.
Time requested: 15 minutes

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND JUDICIAL DEPARTMENT
-------------------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

                        Respondent,

    -against-

                     Ap. Div. Dkt. No.
                     2005-8854
                     Nassau Ind.
MARK ORLANDO,                 167N-05

                        Appellant.

-------------------------------------------------------------------------------X

**REPLY BRIEF**

Kerry Bassett
Bassett & Bassett, P.C.
Attorneys for Appellant
320 Carleton Avenue, Suite 4200
Central Islip, New York 11722
(631) 234-2511

# TABLE OF CONTENTS

POINT ONE
PURSUANT TO *PEOPLE V. ROGERS,* THE APPELLANT'S RIGHT TO COUNSEL WAS VIOLATED, AND THE HEARING COURT SHOULD HAVE SUPPRESSED THE APPELLANT'S ALLEGED STATEMENTS TO POLICE(Answering Point I of the Respondent's Brief)................4

POINT TWO
REVERSAL IS REQUIRED BASED ON *BRUTON V. UNITED STATES* AND *CRAWFORD V. WASHINGTON*(Answering Point II of the Respondent's Brief)....................................................6
    A. Jeannot's confession was improperly admitted into evidence.......7

    B. The error was not harmless............................................13

POINT THREE
THE PROSECUTION'S FAILURE TO NOTIFY THE APPELLANT THAT NASSAU COUNTY POLICE RECOVERED $17,000.00 DURING THE COURSE OF THE INVESTIGATION CONSTITUTES A DISCOVERY VIOLATION (Addressing Point V of the Respondent's Brief)....................................................................15

POINT FOUR
THE COURT ERRED BY PERMITTING THE PEOPLE FROM ENTERING THE STORAGE FACILITY VIDEOTAPE INTO EVIDENCE(Answering Point III of the Respondent's Brief) ...............16

POINT FIVE
THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO USE A MANNEQUIN AS DEMONSTRATIVE EVIDENCE(Answering Point IV of the Respondent's Brief)........................................17

POINT SIX
THE PROSECUTOR'S SUMMATION WAS IMPROPER AND PREJUDICIAL(Answering Point VI of the Respondent's Brief).........17

POINT SEVEN
THE TRIAL COURT IMPROPERLY CHARGED THE JURY(Answering Point VII of the Respondent's Brief)........................................17

POINT EIGHT
THE  APPELLANT  WAS  NOT  AFFORDED  MEANINGFUL
REPRESENTATION BY TRIAL COUNSEL(Answering Point VIII of the
Respondent's Brief)...............................................................18

CONCLUSION.......................................................................19

CERTIFICATE OF COMPLIANCE.........................................20

**POINT ONE**

**PURSUANT TO *PEOPLE V. ROGERS,* THE APPELLANT'S RIGHT TO COUNSEL WAS VIOLATED, AND THE HEARING COURT SHOULD HAVE SUPPRESSED THE APPELLANT'S ALLEGED STATEMENTS TO POLICE(Answering Point I of the Respondent's Brief)**

The Appellant maintains that his statements to the police about the Calabrese homicide were obtained in violation of his right to counsel and were improperly admitted at trial.

The Defendant established that he was represented by Barry Philips, Esq. and that the detectives knew, or should have known, that he was previously represented by counsel.  The People argue that *People v. Bing* (76 N.Y.2d 331 [1990])-which holds that even if a defendant is in custody on a pending charge, and is represented by counsel on that charge, the police may question him about unrelated matters if they have no knowledge of defendant's representation on the pending matter-applies in this case, since the detectives in the Calabrese homicide had *no* knowledge that the Appellant was represented by Mr. Philips.   The People argue that the detectives testified that the Appellant never asked to speak with his attorney; and, did not ask to speak with any attorney.  Respondent's Brief at 36.

This argument is belied by Det. McHugh's own testimony.  Det. McHugh stated that when the Appellant was taken into custody, he did not

4

ask him if he wanted an attorney; he did not recall the Appellant asking to speak to his attorney, Barry Philips, Esq., but *did* recall an attorney calling later that day. H. 125. Furthermore, the Homicide Bureau blotter reflects that Barry Philips, Esq. called, representing the Appellant, at 3:15 p.m. the afternoon after the Appellant's arrest. H. 126-127.

Most importantly, the detectives knew that the Appellant had two outstanding misdemeanor warrants, which were the basis for the Appellant's arrest. For the detectives to learn about the warrants, they would have had to run the Appellant's "rap sheet" or New York State criminal record, which demonstrates that the Appellant had retained private counsel, Mr. Philips. The Appellant's NYSIID was used at his arraignment on the Felony Complaint and his Indictment, and is a part of the record on appeal.

"With respect to a right to counsel claim, after the People go forward to justify the police interrogation, if the defendant makes a claim that he is represented by counsel on another pending charge of which the police had knowledge, it is the defendant's burden to show that he was, in fact, represented by counsel on the earlier charge at the time of interrogation." *People v. Rosa,* 65 N.Y.2d 380 (1985). In *Rosa,* the interrogating detective knew that the defendant had been recently charged in a Brooklyn kidnapping case when he questioned him in New York County concerning an unrelated

murder.   The Court in *Rosa* held that the interrogating officer had a duty to inquire whether the defendant had obtained representation on the pending case, and failing that inquiry, he was chargeable with whatever it would have disclosed.

Here, Det. McHugh admitted that he never asked the Appellant if he had an attorney or wanted an attorney, presumably because he already knew the Appellant had counsel.   Det. McHugh's failure to make the inquiry requires that this Court remand this matter to the County Court and suppress the Appellant's statements.

In the alternative, the Appellant requests that this Court determine that there is an insufficient factual record sufficient to permit appellate review. *People v. Kinchen,* 60 N.Y.2d 772 (1983).

## POINT TWO

### REVERSAL IS REQUIRED BASED ON *BRUTON V. UNITED STATES* AND *CRAWFORD V. WASHINGTON*(Answering Point II of the Respondent's Brief)

The People contend that Det. McGinn's testimony regarding Jeannot's confession was properly offered for the nonhearsay purpose of demonstrating what prompted the Appellant to give his second statement.   In any event, the People argue, even if this Court were to find that the evidence was improperly presented, the error was harmless.

6

A.    Jeannot's confession was improperly admitted into evidence

Jeannot's confession to police, that the Appellant paid him to kill Calabrese, was improperly admitted at trial. The Court's determination, that Jeannot's confession was admissible to demonstrate its effect on the detectives, was error.

The cases cites by the People in support of its argument that the County Court did not err in permitting Det. McGinn to testify regarding Jeannot's confession are inapplicable to the facts of this case. In *People v. Rodriguez* (28 A.D.3d 496 [2nd Dep't, 2006]), this Court held that the prosecution was properly permitted to question the a detective about the knowledge he derived from other persons for the nonhearsay purpose of rebutting the defense argument that the detective had fabricated portions of the defendant's second statement, and because the defense had "opened the door" to such questioning.

Here, there was no allegation that the Appellant's second statement was created, in whole or in part, by Det. McGinn. Furthermore, the defense certainly did not open the door to the questions, since Det. McGinn revealed Jeannot's confession on direct examination, before defense counsel was permitted to question him. *See also, People v. Marki,* 432 A.D.3d 961 (2nd Dep't, 2007).

7

In *People v. Reynoso* (2 N.Y.3d 820 [2004]), the Court determined that there was no merit to the defendant's claim that his constitutional right to confront witnesses was violated when the trial court allowed the People to elicit a statement that a nontestifying codefendant had made to a detective, on the ground that the statement was admitted not to establish the truth of the matter asserted, but rather to show the detective's state of mind.

First, the decision in *Reynoso* does not describe *what* type of statement the codefendant made to the testifying detective. We are not clear if the statement was a confession, whether it inculpated the defendant, or whether it was simply a self-serving statement made to law enforcement. Second, the line of cases supporting admitting hearsay evidence to demonstrate its effect on law enforcement describe scenarios where the People attempt to demonstrate *why a defendant subsequently confessed, or why a defendant was subsequently arrested.* See, *People v. Ewell,* 12 A.D.3d 616(2nd Dep't, 2004); *People v. Perez,* 9 A.D.3d 376 (2nd Dep't, 2004); *People v. Davis,* 23 A.D.3d 833 (3rd Dep't, 2005); *People v. Ruis,* 11 A.D.3d 714 (2nd Dep't, 2004).

Here, the Appellant never inculpated himself or confessed to Det. McGinn, and there was never any question *why* the detectives arrested the Appellant for the murder of Calabrese. Members of law enforcement

8

testified why they believed the Appellant was a suspect in the shooting *before* he was arrested on the outstanding warrants. Therefore, it was unnecessary for the jury to hear why the Appellant changed his statement. Quite simply, Det. McGinn could have testified that the Appellant changed his statement, and what the statements were.

Furthermore, the probative value of Jeannot's confession and that portion of Det. McGinn's testimony was far outweighed by its obvious prejudice. *United States v. Reyes,* 18 F.3d 65 (2d. Cir. 1994); *United States v. Forrester,* 60 F.3d 52 (2d. Cir. 1995).

In *Reyes,* the Court held that in some instances, information possessed by investigating agents is received at trial not for the truth of the matter, but as "background" to explain the investigation, or to show an agent's state of mind so that the jury will understand the reasons for the agent's subsequent actions. *See, e.g., United States v. Lubrano,* 529 F.2d 633 (2d Cir.1975), *cert. denied,* 429 U.S. 818 (1976); *United States v. Valencia,* 957 F.2d 1189, (5th Cir.), *cert. denied,* 506 U.S. 889 (1992); *United States v. Love,* 767 F.2d 1052 (4th Cir.1985), *cert. denied,* 474 U.S. 1081 (1986). Such evidence can be helpful in clarifying noncontroversial matter without causing unfair prejudice on significant disputed matters. In other instances, it can constitute appropriate rebuttal to initiatives launched by the defendant. *See*

9

*United States v. Hawkins,* 905 F.2d 1489 (11th Cir.1990), *cert. denied,* 498 U.S. 1038 (1991). The Court, however, held that neither circumstance occurred in *Reyes.*

The *Reyes* Court explained that the proffer of such evidence generally raises two questions: first, whether the non-hearsay purpose by which the evidence is sought to be justified is relevant, *i.e.,* whether it supports or diminishes the likelihood of any fact "that is of consequence to the determination of the action," *see* Fed.R.Evid. 401, and second, whether the probative value of this evidence for its non-hearsay purpose is outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement. *See* Fed.R.Evid. 403. *See also, United States v. Tussa,* 816 F.2d 58 (2d Cir.1987). Thus, contrary to the government's contention, the mere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice. The greater the likelihood of prejudice resulting from the jury's misuse of the statement, the greater the justification needed to introduce the "background" evidence for its non-hearsay uses.

The *Reyes* Court explained that questions involved in the determination of the relevance and importance of such evidence include: (i)

10

Does the background or state of mind evidence contribute to the proof of the defendant's guilt? (ii) If so, how important is it to the jury's understanding of the issues? (iii) Can the needed explanation of background or state of mind be adequately communicated by other less prejudicial evidence or by instructions? (iv) Has the defendant engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice to the Government?

Questions involved in the assessment of potential prejudice include: (v) Does the declaration address an important disputed issue in the trial? Is the same information shown by other uncontested evidence? (vi) Was the statement made by a knowledgeable declarant so that it is likely to be credited by the jury? (vii) Will the declarant testify at trial, thus rendering him available for cross-examination? If so, will he testify to the same effect as the out-of-court statement? Is the out-of-court statement admissible in any event as a prior consistent, or inconsistent, statement? (viii) Can curative or limiting instructions effectively protect against misuse or prejudice?

The *Reyes* Court determined that virtually every variable argued against receipt of the evidence, especially, as in the Appellant's case, the testifying member of law enforcement's state of mind as her investigation progressed was *probably not relevant and was certainly not important to any*

*issue properly in the trial.* The state of mind of the law enforcement officer may be relevant to the history of the investigation, but the history of the investigation was not relevant to the guilt or innocence of the defendant. The investigating officer's state of mind, although perhaps important to the story of the investigation, nonetheless remains irrelevant to the issue being tried: *The question of the defendant's guilt.*

However, as to the capacity for prejudice, the Court determined that the co-conspirators' statements addressed the most important disputed issue in the trial; they directly implicated the defendant in the crime. In addition, the declaration implicating the defendant in the crime came from a highly credible source, communicating to the jury a powerful message that the defendant was guilty.

The *Reyes* Court also cautioned that while it is assumed that juries will follow limiting and curative instructions, there are, however, occasions where the prejudice is so severe that such instructions are unlikely to be effective. Given the high potency of the declarations in the *Reyes* case, "their determinative significance for the only important issue in the trial, and their lack of significance for any other purpose, the limiting instructions given by the court were unlikely to prevent the jury from considering the declarations for their truth."

The *Reyes* Court held that limiting instructions did not effectively guard against the prejudicial impact of the declarations as highly persuasive evidence of the defendant's guilt, and the resulting prejudice from the receipt of such incriminating declarations was considerable and far exceeded the minimal or non-existent probative value of the non-hearsay uses of this evidence. The *Reyes* Court concluded that the receipt of this evidence was error.

Here, the County Court could have fashioned a remedy that would have allowed Det. McGinn to testify about the Appellant's second statement without divulging Jeannot's confession. New York State Courts recognize the need for co-defendants to be tried separately when it "appear(s) that a joint trial necessarily will, or did, result in unfair prejudice to the moving party and substantially impair his defense". *People v. Mahboubian*, 74 N.Y.2d 174 (1989). After the joint *Huntley* hearing was conducted and Jeannot's confession was deemed admissible at trial, the need to separate the Appellant's case from Jeannot's was clear. The County Court's ruling, permitting Det. McGinn to testify about Jeannot's confession, constituted an end run around the severance of the two cases and prejudiced the Appellant.

B.    The error was not harmless

The People maintain that if admitting Jeannot's confession into evidence via Det. McGinn was error, it was harmless error. Constitutional error requires reversal unless the error's impact was "harmless beyond a reasonable doubt." *Id.*, 4. N.Y.3d at 198; *Schneble v Florida,* 405 US 427, 430 (1972). Ultimately "however overwhelming may be the quantum and nature of other proof, the error is not harmless...if there is a reasonable possibility that the [error] might have contributed to the conviction." *People v Crimmins,* 36 NY2d 230, 240-241 (1975).

Other than Jeannot's confession implicating the Appellant, the People offered no other proof that the Appellant was actively involved in the death of Calabrese. Jeannot's confession is not corroborated by any physical evidence; the People failed to admit any physical evidence that demonstrated that the Appellant played a part in the Calabrese killing; the Appellant's clothing was not found to have any trace of Calabrese's blood or bodily fluids, despite the People's argument that the Appellant "hugged" Calabrese immediately before Jeannot shot him; the Appellant's wife's Suzuki was not found to have any trace of the Appellant's DNA; the People failed to produce a single eye-witness to the shooting; the prosecution could not produce any evidence that the Appellant paid Jeannot any money, let alone $4,000.00, to kill Calabrese.

14

The Appellant's conviction should be reversed, a new trial ordered, and the County Court ordered to limit the testimony of Det. McGinn, preventing the mention of the Jeannot confession.

## POINT THREE

**THE PROSECUTION'S FAILURE TO NOTIFY THE APPELLANT THAT NASSAU COUNTY POLICE RECOVERED $17,000.00 DURING THE COURSE OF THE INVESTIGATION CONSTITUTES A DISCOVERY VIOLATION (Addressing Point V of the Respondent's Brief)**

The People argue that Det. Kuhn's reference to $17,000.00 found during the course of the investigation into the Calabrese killing is not reviewable on appeal; is likely a "mistake;" and if error, is harmless. Respondent's Brief at 65-66.

The People contend that Det. Kuhn's "vague" reference to the $17,000.00 (the exact amount the prosecution hypothesized the Appellant owed to Calabrese, and the motive for the shooting), and the potential implied discovery violation, is unpreserved for appellate review because there is "nothing in the record that establishes that Det. Kuhn found $17,000.00" during the investigation. Respondent's brief at 66. Nothing, of course, but the testimony of Det. Kuhn.

The People argue that it is the Appellant's responsibility to secure an adequate record for this Court's review, and imply that the court reporter

must have made a transcription error, or Det. Kuhn was simply mistaken. The transcript is deemed correct, and had the People truly believed it was not accurate, surely a motion to resettle the transcript would have been made prior to the filing of the Respondent's Brief.

Furthermore, the People arguing that Det. Kuhn may have been mistaken, or misspoke is a case of reverse-vouching for the witness; in essence, urging this Court to *not* believe Det. Kuhn's reference to the $17,000.00. This Court would not condone the People vouching for a witness, and it should not credit the People's argument that Det. Kuhn was simply mistaken.

As to the People's contention that any error was harmless in light of the "overwhelming evidence" of the Appellant's guilt, the Appellant respectfully refers this Honorable Court to Part B of Point Two of the Reply Brief.

## POINT FOUR

### THE COURT ERRED BY PERMITTING THE PEOPLE FROM ENTERING THE STORAGE FACILITY VIDEOTAPE INTO EVIDENCE(Answering Point III of the Respondent's Brief)

The Appellant respectfully relies on Point Three in the Appellant's Brief, and as to the People's contention that any error was harmless in light of the "overwhelming evidence" of the Appellant's guilt, the Appellant

respectfully refers this Honorable Court to Part B of Point Two of the Reply Brief.

## POINT FIVE

### THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO USE A MANNEQUIN AS DEMONSTRATIVE EVIDENCE(Answering Point IV of the Respondent's Brief)

The Appellant respectfully relies on Point Four in the Appellant's Brief and as to the People's contention that any error was harmless in light of the "overwhelming evidence" of the Appellant's guilt, the Appellant respectfully refers this Honorable Court to Part B of Point Two of the Reply Brief.

## POINT SIX

### THE PROSECUTOR'S SUMMATION WAS IMPROPER AND PREJUDICIAL(Answering Point VI of the Respondent's Brief)

The Appellant respectfully relies on Point Five of the Appellant's Brief and as to the People's contention that any error was harmless in light of the "overwhelming evidence" of the Appellant's guilt, the Appellant respectfully refers this Honorable Court to Part B of Point Two of the Reply Brief.

## POINT SEVEN
### THE TRIAL COURT IMPROPERLY CHARGED THE JURY(Answering Point VII of the Respondent's Brief)

17

The Appellant respectfully relies on Point Seven of the Appellant's Brief and as to the People's contention that any error was harmless in light of the "overwhelming evidence" of the Appellant's guilt, the Appellant respectfully refers this Honorable Court to Part B of Point Two of the Reply Brief.

Additionally, counsel confirms that Assistant District Attorney Sarah Spatt forwarded Exhibit One, the certified amended jury charge minutes, to the undersigned.

At the close of testimony, the trial court charged the jury on the law and incorrectly instructed the jury.

## POINT EIGHT

### THE APPELLANT WAS NOT AFFORDED MEANINGFUL REPRESENTATION BY TRIAL COUNSEL(Answering Point VIII of the Respondent's Brief)

The People argue that the Appellant was afforded effective assistance of counsel. The Appellant relies primarily on Point Eight of the Appellant's Brief, but makes one final argument in response to the People's contention. In almost every point of the Respondent's Brief, the People allege that the issue in question is unpreserved for appellate review. In Point Eight of the Appellant's Brief, it is demonstrated that there was no legitimate tactical reason for defense counsel to fail to repeatedly object, requiring the

18

Appellant to urge this Court to reach the merits in the interests of justice.   It cannot be said, then, that the Appellant was afforded meaningful representation. *People v. Hobot,* 84 N.Y.2d 1021 (1995).

## CONCLUSION

The Appellant respectfully requests that the Appellant's conviction be reversed and this matter remanded to the County Court for further proceedings.

Dated:      Central Islip, New York
            October 2, 2008

Respectfully submitted,

_____

Kerry Bassett

## CERTIFICATE OF COMPLIANCE
### Pursuant to Rule § 670.10.3 (f) of the
### Appellate Division, Second Department

It is hereby certified that the information below sets forth the specifications by which this computer-generated brief complies with Rule § 670.10.3 (f) of this Court.

The 'Microsoft Word' program indicates that this brief contains 3492 words, not including the table of contents or certificate of compliance.

The typeface (font) is Times New Roman.

The point size is 14pt, including foot notes.

The line spacing is 2.0, including footnotes.

Dated:      Central Islip, New York
            October 2, 2008

_____

Kerry Bassett